[No. A130314. First Dist., Div. Three. June 29, 2012.]

KENNETH HOITT, Plaintiff and Appellant, v.
DEPARTMENT OF REHABILITATION, Defendant and Respondent.

COUNSEL

Tamara L. Loughrey for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Jennifer Kim, Susan M. Carson and Elizabeth Edwards, Deputy Attorneys General, for Defendant and Respondent.

OPINION

McGUINESS, P. J.—Appellant Kenneth Hoitt, who suffers from cerebral palsy, applied to the Department of Rehabilitation (Department) seeking full reimbursement of his tuition associated with pursuing a degree in video game art and design at a private college. The Department determined Hoitt was eligible for tuition assistance but only at the "state university" rate. In this appeal, Hoitt challenges a decision of the Rehabilitation Appeals Board (Board) that upheld the Department's determination.

Hoitt's appeal turns on the interpretation of regulations governing when the Department is obligated to provide vocational training at a private institution for an eligible person with a disability. He focuses primarily on section 7155,

subdivision (a)(1) of title 9 of the California Code of Regulations,[1] which in general provides that training at a private institution may be provided if it is clear the client's training needs can be "better met" by a private institution. We conclude the Department is obligated to fund training at no more than the rate charged by a public institution if it establishes that the public institution is *sufficient* to meet the client's training needs and vocational objective, regardless of whether the private institution may offer a training program that is better in certain respects. We also conclude that substantial evidence supports the Board's decision to fund Hoitt's education at a public institution rate. Accordingly, we affirm the judgment of the trial court denying his petition for a writ of administrative mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant Kenneth Hoitt has cerebral palsy and received special education services from kindergarten through 12th grade as a result of a specific learning disability. He graduated from high school in June 2007.

By his sophomore year in high school, Hoitt had decided he wanted to attend Ex'pression College for Digital Arts (Ex'pression), a private school in Emeryville. His goal was to become a video game designer. Ex'pression offers an accelerated two-and-one-half-year program in "Game Art and Design" leading to a bachelor of applied science (BAS) degree. Because Ex'pression offers classes year round, a student in the Game Art and Design program can complete the four-year BAS degree in 32 months. Tuition for the entire BAS program at Ex'pression cost approximately $72,000 during the time period relevant to this appeal. Hoitt applied for and was admitted to Ex'pression, with classes scheduled to begin in October 2007.

On August 2, 2007, the Department received Hoitt's application for vocational rehabilitation services.[2] He sought "[h]elp with college education expenses/tuition" as well as a "[v]ocational assessment for the SSI/Disability Adjudication." Hoitt first met with a rehabilitation counselor on August 16, 2007. His goal was to receive an education from Ex'pression leading to a "B.S. in digital Arts." During an interview later in August, Hoitt's mother and aunt explained that one of the reasons he chose Ex'pression was because it did not require a foreign language for admission. The mother informed the rehabilitation counselor that Hoitt's high school strongly advised him not to take a foreign language, purportedly because of the cost and difficulty of securing an instructional aide for such a class.

---

[1] All further undesignated section references are to regulations contained in title 9 of the California Code of Regulations.

[2] The Department provides funding for vocational training, education, counseling, job placement, transportation, and myriad support services to assist persons with disabilities achieve their employment goals. (See generally Welf. & Inst. Code, § 19000 et seq.)

On October 2, 2007, the Department sent Hoitt a letter informing him that he was eligible for vocational rehabilitation services. The Department determined that, "given the complexity of Mr. Hoitt's disabilities and the specialized nature of [Ex'pression's] training," it would fund Hoitt's tuition at Ex'pression for two five-week terms at the community college rate in order to provide time to evaluate the appropriateness of Hoitt's "Individualized Plan for Employment."[3] From the outset, the Department informed Hoitt about its policies concerning tuition assistance for an eligible individual who chooses to attend a private college. The Department also provided Hoitt with information concerning programs related to his area of interest that were offered at public community colleges and universities. Hoitt began attending classes at Ex'pression in October 2007.

In February 2008, Hoitt contacted his rehabilitation counselor to question tuition reimbursement at the community college rate. He told the counselor he was aware of another person determined to be eligible for vocational rehabilitation assistance who was receiving a "free ride" at a private school. The rehabilitation counselor explained that the Department's reimbursement rates are based upon regulations specifying that, in general, tuition is reimbursed at a community college rate for the first two years of college. In a letter dated February 5, 2008, the counselor sent Hoitt a copy of the regulations related to cost assistance for college level training. The letter also stated the counselor's understanding that the training at Ex'pression "is available in public institutions, and in fact, public colleges have been increasing courses available in multimedia programs, including Video Game Developer."

In March 2008, the Department sent Hoitt an Individualized Plan for Employment for review and signature. The Department sent a followup letter on May 1, 2008, after failing to hear back from Hoitt. Hoitt's mother responded that she disagreed with the Department's assessment that public colleges offered programs comparable to the one Hoitt was enrolled in at Ex'pression. His aunt objected to reimbursement at the community college rate and urged that the Department "fund completely his education" at Ex'pression. In response, the Department offered to conduct a meeting with Hoitt and his family on June 6, 2008.

Before the June 2008 meeting, Department staff members performed further investigation and determined that a community college would not provide sufficient preparation for Hoitt's career goal. However, the staff members also determined that a program at San Francisco State University

---

[3] An Individualized Plan for Employment, or IPE, is a written plan of action and a statement of understanding regarding the rights and responsibilities of the client and the Department. It is developed jointly by the client and the rehabilitation counselor. (See §§ 7018, 7130, 7131.)

(SFSU) would sufficiently prepare Hoitt for his chosen profession and would be able to accommodate his unique needs. Accordingly, the Department took the position that reimbursement at the SFSU rate would be "appropriate and allowable."

Department staff members, along with a client assistance program (CAP) advocate who was there to represent Hoitt's interests, met with Hoitt, his mother, and his aunt on June 6, 2008. The parties discussed the draft Individualized Plan for Employment, which Hoitt signed that day. Among other things, the Individualized Plan for Employment provided that, beginning in June 2008, tuition would be reimbursed at the "State College rate" for a four-year degree.[4] The Department clarified that, because Ex'pression offers a two-and-one-half-year program, the total tuition cost of a four-year degree program at SFSU was divided into two and one-half years. The total authorized tuition reimbursement was approximately $8,651 per year, subject to adjustments for increases in the SFSU tuition rate.[5] "It was agreed that a labor market survey would be requested to . . . clarify the . . . educational requirements for video game designers and related occupations."

In late July 2008, the Department received the labor market survey it had requested. According to the survey, employment in the video game field is very competitive and highly skilled, with 85 percent of people in the industry having a four-year degree or higher. The job of game designer is "essentially the hardest job to get in the industry" in that it is "the equivalent of a movie director" in the film industry. The survey reported that "[g]ame industry companies don't look at what school you went to" because "[g]etting a job is much more about the work that someone produces rather than where, or if, they went to school." The survey stressed that the important thing is for job applicants to have a portfolio showing their work.

Hoitt appealed the Department's tuition decision to the Board, which received his "Request for Fair Hearing" on June 2, 2009. In the appeal, Hoitt wrote that, "in violation of California Code of Regulations the Department has refused to pay the full tuition of my training program which is unique, highly specialized and not offered in California public institutions." The Department submitted documentary evidence to the Board as well as a written response addressing Hoitt's appeal.

---

[4] The Department also provided financial support and services to Hoitt in the form of a computer, software programs, computer equipment and training, books, and transportation at $9 per day to attend Ex'pression.

[5] The full tuition for the two-and-one-half-year program at Ex'pression was approximately $72,000. It was estimated by the Department that Hoitt would receive grant aid totaling $30,000 over the course of his program at Ex'pression, leaving approximately $42,000 of the tuition cost not covered by grant aid.

The Board conducted a hearing on Hoitt's appeal on July 16, 2009. Hoitt was represented by a CAP advocate, who took the position that public institutions do not offer programs remotely similar to the Ex'pression curriculum for video game designers. The CAP advocate emphasized that Ex'pression requires a student to prepare a portfolio, which the labor market survey recognized was "the crucial element" in obtaining employment in the video game industry. Hoitt testified he was in the process of developing a portfolio of his work while attending Ex'pression. He also stated he had friends at Ex'pression and agreed that he was doing "quite well" at the school.

The Department's representative stated that, according to the labor market survey, it was not necessary to have a degree from a video game design school to be employed in the field of video game design. The representative acknowledged that Ex'pression provides the type of training required for Hoitt's desired vocation but that SFSU similarly would prepare him for employment in the field with offerings such as a certificate in interdisciplinary digital arts as part of SFSU's College of Creative Arts degree program. Further, the Department's representative pointed out that SFSU offers internship opportunities, unlike at Ex'pression. Another Department representative testified that an SFSU program offered many of the same courses as Ex'pression, including programming and courses specific to video game design. The Department did not claim the SFSU program was identical to the Ex'pression curriculum but took the position that it "would provide good preparation for entry into the profession." While acknowledging that Hoitt was "thriving" at Ex'pression and loved that environment, the Department determined that a public institution was sufficient to meet his needs.

The Board issued a written decision denying Hoitt's appeal on August 27, 2009. The Board determined Hoitt had not demonstrated that a "degree must be obtained in a specific subject, or from a specific school" in order to prepare someone for employment in the video game design field. The Board found that Ex'pression was "clearly meeting [Hoitt's] needs" but also found that Hoitt "did not provide proof that this was the only college program that would meet his needs, nor was documentation provided that [Hoitt] had even attempted to investigate the programs and supports for individuals with disabilities at the public institutions recommended by" the rehabilitation counselor. Hoitt's investigation was limited to the online information for one public institution—California State University, East Bay—as well as the online information about the game art and video design degree offered by Ex'pression. The Board found that "[t]his very limited sample of one degree offered at one public college, particularly when it is not one of the primary colleges recommended by the [rehabilitation counselor] as offering similar programs, does not provide adequate documentation on which to assess the value of one college program over another."

Further, the Board concluded the applicable regulations merely require that training at a public institution must be "sufficient" to meet the client's training needs; the regulations do not specify that a public school must be better than or even comparable to the private school. The Board found that, "[w]hile [Hoitt's] testimony extolled the virtues of the private school, the testimony did not prove that local public schools were insufficient to meet his training needs." Accordingly, the Board found the Department acted in accordance with title 9 of the California Code of Regulations and other applicable law when it denied Hoitt's request for full tuition at Ex'pression. The Board directed the Department to continue to fund Hoitt's tuition at Ex'pression at the SFSU rate, including adjustments for any increases in tuition and fees at SFSU.

On February 22, 2010, Hoitt filed a petition for a writ of administrative mandate challenging the Board's decision. In an order dated September 13, 2010, the trial court denied Hoitt's petition. The trial court found substantial evidence in the record that public colleges offer equivalent training to that provided by Ex'pression. The court stated: "[Hoitt] has not demonstrated where in the record it shows that the training he seeks is unavailable in a public institution or that it is clear that his training needs are better met at Ex'pression College. [Hoitt's] arguments that [SFSU's] program does not provide adequate training and that it is hard to get into the program, appear to be based on speculation rather than evidence." Hoitt timely appealed the judgment denying his administrative mandate petition.

### DISCUSSION

### I. *Standard of Review*

Code of Civil Procedure section 1094.5 sets forth the procedure for the review of a final administrative decision. Like the trial court, we assess whether the agency abused its discretion in that it failed to proceed as required by law. (Code Civ. Proc., § 1094.5, subd. (b).) We also consider whether the administrative agency's findings are supported by substantial evidence and whether the findings support the agency's legal conclusion or ultimate decision. (*Id.*, subds. (b), (c); *Young v. Gannon* (2002) 97 Cal.App.4th 209, 224–225 [118 Cal.Rptr.2d 187].) "[O]ur function is identical to that of the trial court, as we too must determine whether substantial evidence supports the administrative decision. [Citations.]" (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1077 [114 Cal.Rptr.2d 798].) It is presumed that an administrative agency regularly performed its duty, and the burden is on the appellant to prove an abuse of discretion. (*Young v. Gannon, supra*, 97 Cal.App.4th at p. 225.)

" '[A]n appellate court must uphold administrative findings unless the findings are so lacking in evidentiary support as to render them unreasonable. [Citations.] A reviewing court will not uphold a finding based on evidence which is inherently improbable [citation], or a finding based upon evidence which is irrelevant to the issues. [Citations.]' [Citation.] The reviewing court, like the trial court, may not reweigh the evidence, and is 'bound to consider the facts in the light most favorable to the Board, giving it every reasonable inference and resolving all conflicts in its favor. [Citations.]' [Citation.]" (*Jaramillo v. State Bd. for Geologists & Geophysicists* (2006) 136 Cal.App.4th 880, 889 [39 Cal.Rptr.3d 170].)

Issues of law raised in a petition for a writ of administrative mandate, including the interpretation of applicable statutes or regulations, are for the courts to resolve de novo. (*Horwitz v. City of Los Angeles* (2004) 124 Cal.App.4th 1344, 1354 [22 Cal.Rptr.3d 295].)

II.  *Regulations Governing Training at Private Institutions*

Regulations governing whether, and under what conditions, the Department may provide rehabilitative vocational training at a private institution are found in title 9 of the California Code of Regulations. Two regulations bear directly on the determination of whether training may be provided at a private institution. One of the regulations—section 7155—generally addresses training at public or private institutions, whereas the other regulation—section 7156—specifically addresses whether college level training may be provided at a private school. Hoitt and the Department dispute the interpretation of applicable regulations, with Hoitt arguing that section 7155 is the more specific regulation that should govern the determination.

Section 7155, entitled "Use of Public or Private Institutions" provides as follows: "(a) Training in a private institution shall not be provided except when: [¶] (1) It is clear that the training needs of the client can be better met by a private, correspondence, on-the-job, tutorial, or other training institution or method; or [¶] (2) Overall cost to the Department will be less; or [¶] (3) The training is not available in a public institution; or [¶] (4) Attendance in a public training program would cause a significant delay in the client's preparation for suitable employment. [¶] (b) Prior written approval of the Rehabilitation Supervisor shall be required before a Counselor may send a client to a private school for training or to a college or university for graduate level training. The Rehabilitation Supervisor's decision shall be based upon documentation that the requirements of (a) as well as of Section 7154 and Sections 7196 through 7198 have been met."

Section 7156, entitled "College Level Training," provides as follows: "Clients receiving college level training shall use the least expensive educational institutions in the following order of preference: [¶] (a) For the first two years, a community college or other equivalent resource. [¶] (b) For the first two years, a state college or university if the overall cost to the Department will be equal to or less than a community college. [¶] (c) After the first two years, a state college or university. [¶] (d) A private school when: [¶] (1) The private school is essential to the success of the IWRP[6]; or [¶] (2) The overall cost to the Department will be equal to or less than the costs of a public school; or [¶] (3) The client agrees to pay all additional costs for training in a private school when the Department has determined that a public institution is sufficient to meet the needs of the client."

■ Rules of statutory construction govern our interpretation of regulations promulgated by administrative agencies. (*Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1145 [122 Cal.Rptr.3d 174]; accord, *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898 [95 Cal.Rptr.3d 183, 209 P.3d 89].) "We give the regulatory language its plain, commonsense meaning. If possible, we must accord meaning to every word and phrase in a regulation, and we must read regulations as a whole so that all of the parts are given effect. [Citation.] If the regulatory language is clear and unambiguous, our task is at an end, and there is no need to resort to canons of construction and extrinsic aids to interpretation. [Citation.]" (*Price v. Starbucks Corp., supra,* at pp. 1145–1146.) Our primary aim is to ascertain the intent of the administrative agency that issued the regulation. (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1235 [130 Cal.Rptr.2d 209].) When that intent "cannot be discerned directly from the language of the regulation, we may look to a variety of extrinsic aids, including the purpose of the regulation, the legislative history, public policy, and the regulatory scheme of which the regulation is a part. [Citation.]" (*Ibid.*)

Literal construction of language should not prevail if it is contrary to the plain intent of the regulation. (*People v. Shabazz* (2006) 38 Cal.4th 55, 67 [40 Cal.Rptr.3d 750, 130 P.3d 519].) In addition, an interpretation that renders other provisions ineffective or nugatory should be avoided. (*Id.* at pp. 67–68.) We interpret a regulation to make it reasonable and workable. (*Manriquez v. Gourley, supra,* 105 Cal.App.4th at p. 1235.)

■ An elementary rule of statutory construction—which applies equally to the interpretation of regulations—is that " 'statutes in pari materia—that is, statutes relating to the same subject matter—should be construed together. [Citation.]' " (*Apartment Assn. of Los Angeles County, Inc. v. City of Los*

---

[6] IWRP, or "Individualized Written Rehabilitation Program," was the term formerly used for an Individualized Plan for Employment. (§ 7018.)

*Angeles* (2009) 173 Cal.App.4th 13, 22 [92 Cal.Rptr.3d 441]; see *Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1090–1091 [103 Cal.Rptr.3d 767, 222 P.3d 214].) Where two regulations appear in conflict, it is the court's task to harmonize the regulations, to the extent possible. (Cf. *Drouet v. Superior Court* (2003) 31 Cal.4th 583, 593–594 [3 Cal.Rptr.3d 205, 73 P.3d 1185].) If inconsistent regulations cannot otherwise be reconciled, the more specific provision takes precedence over a conflicting general provision. (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles, supra,* 173 Cal.App.4th at p. 22.)

The dispute here appears to be primarily over the meaning of language in section 7155 specifying that training in a private institution shall not be provided unless "[i]t is clear that the training needs of the client can be *better met*" by the private institution. (§ 7155, subd. (a), italics added.) Hoitt seems to interpret the italicized language to suggest that training at a private institution is justified if it is more closely tailored to the client's needs than training provided by a public institution.[7] The Department takes a different approach, focusing instead on language in section 7156 to the effect that private school training may be provided only when it is "essential" to the success of the Individualized Plan for Employment. (§ 7156, subd. (d)(1).) The Department's position, in effect, is that it will not pay for private schooling beyond a public school rate when the public school is *sufficient* to meet the client's training needs, regardless of whether the private school would provide training that might be viewed as superior in some respects. (See § 7156, subd. (d)(3).)

The manifest purpose of sections 7155 and 7156 is to give preference to less expensive public institutions unless certain exceptions are met. Section 7155, subdivision (a) specifies that training "shall not be provided" at a private institution unless one or more conditions are met. As set forth in subdivision (b) of section 7155, a supervisor must preapprove private school training ·before a rehabilitation counselor may send a client to a private institution. Section 7156 provides that clients receiving college level training "shall use the least expensive educational institutions" in an order of preference beginning with community college or an equivalent resource. Further, both section 7155 and section 7156 focus on the overall cost to the Department and authorize private training if the cost to the Department is less. (§§ 7155, subd. (a)(2), 7156, subd. (d)(2).)

In addition, the plain intent of the regulatory scheme is that the Department is obligated to provide sufficient or necessary training—but no more—in

---

[7] Although Hoitt does not articulate precisely how he would interpret section 7155, subdivision (a)(1), he clearly takes the position it establishes a more liberal standard than section 7156 for authorizing training at a private institution.

order to allow the client to achieve his or her vocational objective. For example, section 7154, subdivision (a) provides in general that "[t]raining services shall be provided *only to the extent necessary* to accomplish" the vocational objective and/or skills and abilities necessary to become a competitive candidate for suitable employment at the entry level. (Italics added.) Likewise, section 7156 provides that a private school may be appropriate when it is "*essential* to the success of the [Individualized Plan for Employment]" or if "[t]he client agrees to pay all additional costs for training in a private school when the Department has determined that a public institution is *sufficient* to meet the needs of the client." (§ 7156, subd. (d)(1) & (3), italics added.)

■ When the regulations are construed together, it is apparent that the Department is required to provide only a level of training that is sufficient, necessary, and essential to achieving the client's vocational objective. The language in section 7155, subdivision (a) concerning whether a client's training needs can be "better met" at a private institution must be construed together with sections 7154 and 7156, as well as considered in light of the regulatory scheme. We can harmonize the regulations by interpreting section 7155, subdivision (a)(1) to provide that the training needs of a client are "better met" by a private institution only when the private institution is better suited to the client's training needs than a public institution would be *and* a public institution is insufficient to meet those needs.[8] In other words, if a public institution is sufficient to meet the training needs of the client, the exception in section 7155, subdivision (a)(1) does not apply. To interpret the regulation otherwise would read the terms "sufficient," "essential," and "necessary" out of the regulations and permit a client to be trained in a private institution if he or she could establish that the private institution provides superior training. However, the key inquiry is not whether the private institution is better. Instead, it is whether training at a private institution is necessary or essential to achieve a sufficient level of training that is otherwise unavailable at a public institution. Our interpretation does not turn on whether one regulation is more specific than the other. As noted above, the rule that a specific provision governs over a conflicting general provision applies only if an inconsistency cannot otherwise be reconciled. (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles, supra*, 173 Cal.App.4th at p. 22.) In this case, it is possible to harmonize the regulations without resort to this interpretive rule. Thus, our holding is not

---

[8] A similar interpretation applies to subdivision (a)(3) of section 7155, which provides that training at a private institution may be appropriate when the "training is not available in a public institution . . . ." It is not enough that a private institution offers training unavailable at a public institution, even if such training may be beneficial to the client. Any such training must be *essential* to the client's vocational objective, because the Department is obligated to provide training only to the extent necessary to achieve that goal. (See § 7154, subd. (a).)

limited to an application of section 7156, which specifically addresses college-level training, but instead applies more generally to the determination of whether the Department may authorize training at any private institution that offers vocational training.

■ Our interpretation of the governing regulations is consistent with the approach taken by the Department. As expressed in the Board's decision, "[P]rivate schooling may only be funded if it is less than the public school rate or if a client agrees to fund the additional costs when the Department has determined training at a public school is *sufficient* to meeting the training needs of the client. [Section 7156] does not specify the public school must be 'better than,' or even 'comparable to,' the private school. The standard to be applied is whether sufficient training is available at the public school." It is well settled that "[c]ourts must defer to an administrative agency's interpretation of a statute or regulation involving its area of expertise unless the challenged construction contradicts the clear language and purpose of the interpreted provision. [Citations.]" (*Ross v. California Coastal Com.* (2011) 199 Cal.App.4th 900, 938 [133 Cal.Rptr.3d 107].) Because the Department's interpretation is not clearly erroneous and touches upon policy issues within the Department's purview, it is entitled to deference. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12 [78 Cal.Rptr.2d 1, 960 P.2d 1031] [administrative agency assumed to have advantage in interpreting regulations it authored, particularly when they involve technical matters or are intertwined with issues of policy and discretion].)

Hoitt contends we must construe the regulations broadly to ensure his ability to pursue his vocational goals, pointing out that remedial statutes, such as those providing for vocational rehabilitation training, are to be interpreted liberally to effectuate their purposes. (See *California State Restaurant Assn. v. Whitlow* (1976) 58 Cal.App.3d 340, 347 [129 Cal.Rptr. 824].) We do not dispute that we must interpret the regulations with an eye to effectuating the purpose of the laws establishing vocational training for persons with disabilities. However, a liberal interpretation does not permit us to ignore the plain language of the regulations as well as the manifest intent of the regulatory scheme. Further, our interpretation effectuates the purpose of the law because it allows eligible disabled individuals to receive training sufficient to meet their vocational goals.

We conclude the Board properly applied the governing regulations in assessing Hoitt's appeal. With the foregoing interpretation of the applicable regulations in mind, we consider the evidence relied upon by the Board.

III. *Substantial Evidence Supports the Board's Decision*

Hoitt claims the trial court erred by failing to properly apply section 7155. Although his claims of error are directed at the trial court, our review is more appropriately focused upon the Board's decision. As noted above, our role is the same as the trial court's in that we assess whether substantial evidence supports the administrative decision. (*Ryan v. California Interscholastic Federation-San Diego Section, supra,* 94 Cal.App.4th at p. 1077.) We consider Hoitt's claims as challenges to the evidence supporting the Board's decision.

Hoitt argues he demonstrated that his training needs could be better met at Ex'pression, pointing out that SFSU did not require development of a video game and offered a portfolio requirement only as part of an independent study program associated with the interdisciplinary digital arts program. He also asserts that the course offerings at SFSU were more general than those at Ex'pression.

The evidence cited by Hoitt does not establish that SFSU would have been insufficient to meet his training needs. Regarding the preparation of a portfolio, which the Department's labor market survey indicated was the most important thing for a job applicant to have, the evidence established that SFSU offered the opportunity to create a portfolio in an independent study program. While Hoitt claims the SFSU independent study offering is "far different from the focused video game design process at Ex'pression," he fails to explain why SFSU's program—even if different from the program at Ex'pression—is insufficient to meet his needs. Also, as the trial court pointed out, he does not point to any evidence establishing that creation of a video game is essential to his vocational objective. While he complains generally that Ex'pression offers a more focused program than SFSU, he again fails to point to evidence establishing that a program more specifically focused on video game design is essential to his Individualized Plan for Employment. To the contrary, the available evidence indicates that a narrowly focused program of study or a degree from a particular school is not required.

According to Hoitt, SFSU did not meet his needs because (1) he had not taken a foreign language in high school and thus did not qualify for admission, and (2) there was no guarantee he would be admitted to the school's interdisciplinary arts program. The foreign language issue was raised only in passing at the appeal hearing when his mother referred to why he chose to attend Ex'pression, which does not have a foreign language require-ment. No one else, including Hoitt's CAP advocate, mentioned the issue at the Board hearing or specifically told the Board that SFSU had a foreign language requirement for admissions. The Department could not be expected

to address an argument that was not raised during the course of the appeal. In addition to the fact Hoitt did not draw the issue to the Board's attention, he failed to present any evidence that his failure to take a foreign language in high school would have barred him from admission to SFSU. In light of the fact his high school apparently discouraged him from taking a foreign language because of his disabilities, it is at least reasonable to believe that SFSU might have offered an accommodation in Hoitt's case that would have excused the foreign language requirement. In short, it is pure speculation to conclude that SFSU would have denied admission to Hoitt on the ground he had not taken the requisite foreign language classes. Likewise, Hoitt's contention that it was difficult to gain entry to the interdisciplinary arts program is based on speculation, as the trial court recognized.

Hoitt also argues that attending SFSU would cause significant delay. He relies on subdivision (a)(4) of section 7155, which provides that training at a private institution may be appropriate if "[a]ttendance in a public training program would cause a significant delay in the client's preparation for suitable employment." According to Hoitt, he would have faced a one-and-one-half-year delay in entering the workforce if he had attended a four-year program at SFSU instead of the two-and-one-half-year program at Ex'pression. He also argues there was no guarantee he would have been able to take all the necessary classes at SFSU that would have allowed him to graduate within four years.

We first note that Hoitt did not specifically mention the issue of delay in the appeal before the Board.[9] In any event, we conclude that, under the circumstances presented here, a one-and-one-half-year delay is not a "significant delay" for purposes of section 7155, subdivision (a)(4). Given that Hoitt sought to attain the equivalent of a four-year college degree, it cannot be said that his vocational objective would be significantly delayed by a program that took four years to complete. The fact that a private institution offers an accelerated program does not mean that a standard-length program offered by a public institution is insufficient to a meet a client's training needs. Further, a student attending SFSU could presumably take classes year round to earn a degree in less than four years. Hoitt did not offer any evidence to suggest he would have been prevented from taking classes year round in order to accelerate the attainment of a degree at SFSU. As for his contention that he might not be able to complete an SFSU degree in four years due to class availability, no evidence has been offered to support the contention, which rests solely on speculation.

---

[9] The issue was addressed briefly by the Department in a written response provided to the Board before the hearing. The Department took the position that "[a]ttendance in the SFSU program would not cause a significant delay." Hoitt did not dispute that contention in the proceedings before the Board.

■  We conclude substantial evidence supports the Board's decision. There was ample evidence offered that the program at SFSU was sufficient to meet Hoitt's needs and that training at Ex'pression was not essential to his individualized plan for employment or his vocational objective. Moreover, the evidence does not support the contention that pursuing a degree at SFSU would cause a significant delay in preparing him for suitable employment. It is immaterial that, in certain respects, the Ex'pression program may have been better than a competing program at SFSU or that the course of study at Ex'pression was more closely tailored to his interests. Because SFSU was sufficient to meet Hoitt's training needs, the Board did not abuse its discretion in limiting the tuition reimbursement to the rate charged by the public institution. (See § 7156, subd. (d)(3).)

## IV.  *Remand to the Board Is Unnecessary*

Finally, Hoitt contends that, even if we are not inclined to reverse the Board's decision, we should remand the matter to the Board for further consideration. He claims the Board based its decision on factors described in section 7156 and on subdivision (a)(1) of section 7155, but that it failed to address the factors contained in subdivision (a)(2) through (4) of section 7155. He argues the Board failed to apply the law correctly and that the matter should be remanded for further proceedings in which he should be able to present further evidence.

Hoitt presents no authority supporting his contention that the matter should be remanded to the Board for further proceedings under these circumstances. (See *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [27 Cal.Rptr.3d 583] [court may consider contention waived when no authority cited for legal argument].) Further, the contention is meritless. He has not demonstrated that the Board was obligated to mention in its decision every possible basis that might support vocational training at a private institution. As specified in section 7155, training in a private institution "shall not be provided" unless one or more exceptions are satisfied. (§ 7155, subd. (a).) It was Hoitt's burden as the appellant to demonstrate his case by a preponderance of the evidence. (§ 7356, subd. (e).) He also had the burden to demonstrate that one of the exceptions in section 7155, subdivision (a) applied to his case. Because Hoitt did not mention or rely on any of the exceptions listed in subdivision (a)(2) through (4) of section 7155, the Board had no obligation to specifically address those provisions in its written decision.[10] We conclude there is no basis to remand the matter to the Board for further proceedings.

---

[10] We note that the Department addressed each of the exceptions in section 7155, subdivision (a) in the written response provided to the Board before the hearing, concluding that "[n]one of the exceptions . . . apply in this case." Subdivision (a)(2) of section 7155 provides an exception from the general rule prohibiting training at a private institution when

**DISPOSITION**

The judgment is affirmed. Respondent shall be entitled to recover its costs on appeal.

Pollak, J., and Jenkins, J., concurred.

---

the overall cost to the Department of a private institution is less. Plainly, that was not the case here. Subdivision (a)(3) of section 7155 provides an exception to the general rule when "[t]he training is not available in a public institution . . . ." While the Board did not specifically analyze this provision in its decision, the issue was clearly encompassed within its consideration of whether a private school was essential to the success of Hoitt's IPE and whether the public institution was sufficient to meet his training needs. (§ 7156, subd. (d)(1) & (3).) Subdivision (a)(4) of section 7155 provides an exception to the general rule prohibiting private institution training when a public training program would cause significant delay. As mentioned above, Hoitt did not mention the issue of delay at the Board hearing. Moreover, as we explained, the evidence does not support a finding that attending SFSU would have caused a significant delay in preparing Hoitt for suitable employment.