Filed 4/23/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SHEILA BUTTS, | B243793 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TC022325) |
| v. | |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, | |
| Defendant and Respondent. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Lynn Olson, Judge. Affirmed in part, reversed in part and remanded with directions.

Paul Kujawsky for Plaintiff and Appellant.

Lynberg & Watkins, and Ric C. Ottaiano for Defendant and Respondent.

_____

Sheila Butts (plaintiff) began her employment at California State University (CSU) at Dominguez Hills in September 1979 in a nonmanagerial position. She had obtained permanent status (tenure) in that position by September 1981. After more than 20 years on the job, she sought and obtained a management position in the Alumni Relations Office in 2003. Plaintiff was aware that, unlike her prior positions, management positions did not provide the benefits of permanent status. Rather, managers served "at-will" at the pleasure of the campus President or the Chancellor, and could be terminated without cause. Nevertheless, plaintiff was confident she would be successful in her job. Moreover, she understood that if things did not work out well she could always "retreat" to her previous tenured position, pursuant to university regulations.

Things did not work out well. After several years in management, plaintiff believed for various reasons that she was being discriminated against because of her race, gender and age. After filing a complaint with the Equal Employment Opportunity Commission (EEOC), the situation worsened and she was terminated from her management job in mid-2008. She believed the termination was in retaliation for her complaints about discrimination. When she sought to retreat to her prior nonmanagement position, her request was denied and the university terminated her employment altogether.

Plaintiff sued the Board of Trustees of the CSU (defendant) in superior court alleging discrimination, retaliation, and various related causes of action. Among other things, she claimed that she was improperly denied her retreat rights. After numerous procedural twists and turns, the superior court ultimately eliminated her claim for retreat rights as a matter of law. As the case approached trial, plaintiff's discrimination claims were dropped and the matter was presented to the jury on the retaliation cause of action alone. After the jury returned a verdict that found there had been no retaliation, judgment was entered for the defendant. Plaintiff's timely appeal seeks to reverse the judgment. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

1.      *Facts*:

Plaintiff began her employment at CSU Dominguez Hills in 1979 as an activities counselor. By 1981, she became an activities coordinator and was informed that she had obtained permanent status.[1] She was periodically promoted to higher positions within the same department, each time classified as a Student Services Professional (SSP). From the commencement of her employment until the end of 1983, she was covered by California State Civil Service rules. Beginning on January 1, 1984, pursuant to the Higher Education Employer-Employee Relations Act (Gov. Code, § 3560 et. seq.; HEERA), her positions were covered by a collective bargaining agreement between the defendant and Academic Professionals of California. From 1981 through 2003, plaintiff attained permanent status in each of the positions she held.

In 2003, plaintiff became aware of an opening for Director of Alumni Relations. She saw this as an opportunity to "promote up," earn more money, and take on added responsibility. Ready for a change, she pursued the job and was initially appointed interim director. She gave notice to her prior supervisor of her change in status by submitting a letter of resignation indicating that her last day in her bargaining unit job would be September 9, 2003. She subsequently became the Director of Alumni Relations and remained in her management position in the alumni relations office until being terminated in late June 2008.

Plaintiff understood that management employees like the Director of Alumni Relations were not eligible for permanent status, but rather served at-will at the pleasure

---

[1] Permanent status, otherwise known as tenure, meant that she had the right to continued employment at the campus unless dismissed for cause, or laid off for lack of funds or lack of work. (Ed. Code, § 89530, subd. (a)(4); Cal. Code Regs., tit. 5, § 42700, subd. (q).)

3

of the campus President or the Chancellor.  (Cal. Code Regs., tit. 5, § 42723, subd. (a).)[2]

Unlike her prior tenured positions, she could be dismissed from her new position with or without cause, and regardless of whether there were funds or sufficient work to keep the position open.  Nevertheless, she testified via declaration during pretrial proceedings that she took that risk because she thought she would perform well in her new position, and because she understood that she would have the right to "retreat" to her previous bargaining unit position if things did not work out.

After several years in management, plaintiff began to feel she was being discriminated against on the basis of her race, gender and age.  She filed a complaint with the EEOC on December 31, 2007.  In late June 2008, she received an evaluation of "marginal," although all prior evaluations had been either superior or satisfactory.  On June 24, 2008, plaintiff received a letter of termination from the Office of the President of CSU Dominguez Hills indicating that her termination was effective on June 30, 2008.  The letter did not offer plaintiff the right to retreat to her former position where she held permanent status.  On or about June 26, 2008, she wrote a letter to the campus President formally requesting rescission of the adverse termination decision, resolution of the employment issue by maintaining her in her current management position, and/or reassignment from her current placement to a position of permanent status in a class where she had passed the probationary period, at her current rate of compensation (i.e., her retreat rights).  In her letter, she specifically cited section 42723 regarding retreat rights, and section 42728, regarding administrative remedies.  Defendant granted none of her requests.  Plaintiff's long employment with CSU came to an end on July 1, 2008.  Approximately six months later, the litigation giving rise to this appeal commenced.

2.    *Procedural History*:

On December 31, 2008, plaintiff filed her original complaint against defendant.  Causes of action 1 through 3 were for discrimination based upon race, gender, and age,

---

[2]    All further undesignated section references are to regulations contained in title 5 of the California Code of Regulations.

respectively. The fourth cause of action was for violation of sections 1981 and 1983 of title 42 of the United States Code alleging not only discrimination but also deprivation of "her property interest of 'retreat rights' " guaranteed to her by the defendant. She also alleged that her reputation was stigmatized in the community and her opportunity to earn a living was seriously impaired by virtue of defendant's allegations of performance deficiencies. The fifth cause of action was for retaliation in violation of Government Code section 12940; the sixth cause of action was for wrongful termination in violation of public policy; the seventh for violation of the Equal Pay Act; and the eighth for intentional infliction of emotional distress.

After defendant demurred to the sixth, seventh and eighth causes of action, plaintiff filed her first amended complaint on June 12, 2009. The first amended complaint contained five causes of action. Plaintiff had deleted the fourth However, plaintiff retained the allegations regarding the denial of retreat rights in "Facts Common to All Causes of Action" part of the first amended complaint.

On July 10, 2009, plaintiff filed her second amended complaint.[3] This pleading was now pared down to only four causes of action -- the first three for discrimination on the basis of race, gender, and age; the fourth for retaliation. In the section of the second amended complaint relating to "Facts Common to All Causes of Action," plaintiff again retained her allegations relating to the denial of her retreat rights. This became the operative pleading in the ensuing litigation.[4]

Apparently concerned that plaintiff would attempt to prove discrimination and/or retaliation by showing that she had been denied her retreat rights, defendant brought a

---

[3]    While the clerk's transcript does not appear to contain a demurrer by defendant to the first amended complaint, the computerized case summary reflects that a demurrer was taken off-calendar on June 19, 2009.

[4]    Shortly before trial, plaintiff obtained leave of court to file a third amended complaint, in order to add a fifth cause of action for violation of due process rights. Leave to file the amended complaint was granted, but a demurrer to the fifth cause of action was later sustained, without leave to amend.

5

motion for summary adjudication which asserted that CSU had no duty to provide plaintiff with retreat rights after she was terminated from her management position.[5] The primary grounds for defendant's motion for summary adjudication dealt with section 42723. That regulation addresses the permanent status of management personnel and the availability of retreat rights, if any, upon termination.

According to defendant, section 42723 had a very limited application: It applied only to employees who were already in management on January 1, 1984 (1/1/84), at the time a new Management Personnel Plan (MPP) went into effect. Since plaintiff was not promoted to a management position until 2003, defendant argued that section 42723 did not apply to her and, therefore, it had no duty to let her retreat to her previous bargaining unit position.

Plaintiff filed her opposition to defendant's motion for summary adjudication on September 16, 2010, arguing that section 42723 did apply to her. Defendant filed its reply on September 24, 2010, and a hearing was held on September 30, 2010. On October 19, 2010 the court signed a written order stating that the motion was granted "on grounds that Defendant had no duty to provide retreat rights to plaintiff . . . ." The order granting the motion expressly found that plaintiff "was not 'included' as a [MPP] employee in 1984, as she was not employed in a management position that was reclassified as a [MPP] position on January 1, 1984. Rather, she voluntarily assumed a position within the [MPP] classification in 2003. Consequently, as a matter of law, the provisions of section 42723, subdivision (c) do not apply to plaintiff."[6]

The case proceeded to trial. Before it commenced, plaintiff's discrimination claims were dropped, leaving only the retaliation claim for jury consideration. Just prior

---

**5** Defendant based the motion on the provision in Code of Civil Procedure section 437c, subdivision (f)(1), which allows a motion for summary adjudication in order to "completely dispose[] of . . . an issue of duty."

**6** The signed order also states that since the motion for summary adjudication was granted, "judgment shall be entered after trial of this action on the remaining causes of action."

to trial, defendant brought motions in limine seeking to exclude evidence of defendant's refusal to provide plaintiff with retreat rights, based upon its contention that section 42723 did not apply to plaintiff, which was already determined as a matter of law by the motion for summary adjudication. The trial court granted the motion in limine, noting the prior summary adjudication ruling.[7]

After a four-week trial which concluded on June 13, 2012, the jury found that defendant had not retaliated against plaintiff when it terminated her after she complained about discrimination. Judgment for the defendant was entered based upon that verdict on July 10, 2012. Plaintiff filed a timely notice of appeal from the judgment.

## STANDARD OF REVIEW

Before determining the standard of review, it is important to determine what is to be reviewed. Defendant claims that an abuse of discretion standard must be applied to the question of admissibility of evidence arising out of the trial court's ruling on the motion in limine as to retreat rights. And it contends that a substantial evidence standard must be utilized to review the question of the jury's determination of disputed facts. Lastly, defendant states that even if there was an error of law made at trial, plaintiff has not met her burden of showing that the error was prejudicial, pointing out that harmless error is not a basis for reversing a judgment.

Defendant's points are well taken. But they sidestep the issues raised by this appeal. Plaintiff concedes that she is not attacking either the verdict or the resolution of factual issues.[8] It follows that even if there were errors in the pretrial proceedings,

---

[7]    The motion for summary adjudication had not completely disposed of a cause of action. But as a matter of law, it completely disposed of the question of whether defendant had a duty to provide plaintiff with retreat rights. As such, it left the pending claims intact but limited the issues and evidence that plaintiff could present at trial. (Code Civ. Proc., § 473c, subd. (n).)

[8]    Indeed, plaintiff did not include a reporter's transcript of the trial testimony as part of her record on appeal.

7

plaintiff agrees they were harmless as to the jury's verdict on the issue of retaliation. Therefore, to the extent the final judgment was based upon the finding of no retaliation, plaintiff accepts it. No reversal is requested, and none is warranted.

Instead, plaintiff is seeking reversal of the judgment to the extent it denied her the right to retreat from her management position to her former bargaining unit position – regardless of whether or not the denial was due to retaliation on defendant's part. This aspect of the judgment arose out of the trial court's granting of defendant's motion for summary adjudication on the issue of defendant's duty to provide retreat rights. It is the standard of review as to this ruling that must be applied here.

Both plaintiff and defendant agree that the trial court was called upon to make a determination which was purely one of law relating to the meaning of a regulation – that is, did section 42723 provide plaintiff with retreat rights or not? Both parties also recognize that issues of law, including the interpretation of both statutes and regulations, are for the appellate court to review de novo. (*Hoitt v. Department of Rehabilitation* (2012) 207 Cal.App.4th 513, 522 (*Hoitt*).) This court employs a de novo standard to review the trial court's interpretation of the regulations regarding plaintiff's right to retreat.

## DISCUSSION

A.    *Background*:

In 1978, the California Legislature passed the Higher Education Employer-Employee Relations Act (HEERA). (Gov. Code, § 3560 et seq.) This act extended collective bargaining rights to employees of the University of California, Hastings College of the Law, and the CSU. (*Regents of University of California v. Public Employment Relations Board* (1986) 41 Cal.3d 601, 604-605.) Employees of these institutions were among the last California public employees to be afforded collective bargaining rights, and the statute expressly excluded managerial and confidential employees from coverage under it. (Gov. Code, § 3562, subd. (e).)

8

To effectuate some of the provisions of HEERA, defendant established the Management Personnel Plan (MPP), which by its terms was a regulation applying to management personnel. (§ 42700 et. seq.) MPP employees were those designated as "management" or "supervisory" in accordance with HEERA. (§ 42700, subd. (bb).) They were not classified as administrative, academic, or nonacademic employees while serving in a MPP position. The MPP expressly provided that MPP employees served at the pleasure of the campus President or the Chancellor, and that they "shall not serve a probationary period and shall not receive permanent status." (§ 42723, subd. (a).)

Permanent status could provide job security to CSU employees in at least two ways: First, a permanent employee could only be dismissed for cause, or laid off for lack of funds or lack of work. (Ed. Code, § 89530, subd. (a)(4), Code Cal. Regs., tit. 5, § 42700, subd. (q).) Second, if an employee were laid off, he or she could "retreat" to a previous class in which permanent status had been obtained. As an example, Education Code section 89555 provides that "[i]n lieu of being laid off, an administrative or nonacademic employee may elect demotion or transfer to any class in which he has served as a permanent employee or to any vacancy for which he is qualified."[9] But MPP employees were not entitled to permanent status under the post-HEERA regulations. As one might expect, the MPP (as a self-described "integrated personnel system addressing the employment rights, benefits and conditions of [CSU] employees designated as 'management' or 'supervisory' under [HEERA]"), addressed the issues of permanent status and retreat rights among managerial personnel. One of the key provisions addressing these issues was section 42723.

Plaintiff recognizes that while she was a MPP employee she did not have permanent status and was an at-will employee in that job. However, she contends that

---

[9]     Defendant points out, and plaintiff concedes, that Education Code section 89555 does not directly apply in this case, since plaintiff was terminated, not laid off. It is mentioned here only as an example of how – in the nonmanagerial setting – employees who might otherwise lose their jobs obtain a degree of security via the right to "retreat" to previous positions in which they held permanent status.

9

she had the right to retreat to her previous nonmanagerial bargaining unit position upon termination from her management job, pursuant to section 42723. Defendant contends that pursuant to that same section, the only MPP employees who had retreat rights were those who already had permanent status as managerial employees prior to the date that the MPP took effect on January 1, 1984.

The resolution of this question determines whether any portion of the judgment against plaintiff should be reversed, and turns on the proper interpretation of section 42723.

B.      *The Interpretation of Section 42723 and Its Applicability to Plaintiff*:

If section 42723 does not provide plaintiff with retreat rights under the circumstances, the judgment must be affirmed in its entirety. If it does, then the judgment must be reversed to the extent that it denied her an opportunity to litigate her retreat rights on the merits.

The relevant portions of section 42723 are as follows:

"(a) A [MPP] employee serves at the pleasure of the campus President or the Chancellor, as appropriate. A [MPP] employee shall not serve a probationary period and shall not receive permanent status.

"(b) . . .

"(c) A [MPP] employee who had permanent status in a class prior to January 1, 1984 shall retain permanent status in the class despite inclusion as a [MPP] employee . . . .

"(d) A [MPP] employee who retains permanent status under subdivision (c) and who is placed in or promoted to a position under the [MPP] shall retain rights as described in this subdivision (d) to the former class in which permanent status is held. Should the appointing power terminate the [MPP] employee's service in a [MPP] position, the employee shall have the right to return to the former class in which permanent status is held at the salary last received in the permanent class."

10

Plaintiff contends that the plain language of section 42733 subsection (c) applies to employees who, like her, "had permanent status in a class prior to January 1, 1984." Since she had permanent status in a bargaining unit class prior to 1984, on its face the regulation appears to apply to her. Therefore, she retained permanent status in her prior class, despite her inclusion as a MPP employee. Then, under section 42723, subdivision (d) if terminated she had the right to return to the prior class in which she had earned permanent status. Nothing in the regulation says she would not retain permanent status, and not have retreat rights, unless she was placed in or promoted to a position under the MPP precisely on 1/1/84.

Defendant claims that section 42723 means something else. Defendant contends that subdivisions (c) and (d) apply only to those employees who were already in a managerial position prior to 1/1/84, *and* were involuntarily included in the MPP on 1/1/84, thereby losing the permanent status they had enjoyed. It asserts that those with permanent status in management positions as of 1/1/84 were "grandfathered into" the MPP when it was established in response to HEERA. For the reasons stated below, plaintiff's position is the correct one.

1. Plain Language:

We start with an analysis of the plain language of the regulation. The rules of statutory construction also govern our interpretation of regulations promulgated by administrative agencies. (*Hoitt*, *supra,* 207 Cal.App.4th at p. 523.) We give the regulatory language its plain, commonsense meaning. If possible, we must accord meaning to every word and phrase in the regulation, and we must read regulations as a whole so that all of the parts are given effect. (*Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1145.) For over 125 years, when determining the meaning of statutes or instruments, "the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858.)

Our primary aim is to ascertain the intent of the administrative agency that issued the regulation. (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1235.) When that intent " 'cannot be discerned directly from the language of the regulation, we may look to a variety of extrinsic aids, including the purpose of the regulation, the legislative history, public policy, and the regulatory scheme of which the regulation is a part. [Citation.]' [Citation.]" (*Hoitt, supra*, 207 Cal.App.4th at p. 523.)

Section 42723 was promulgated in response to HEERA, which changed the substantive law by providing collective bargaining rights to CSU employees, other than managerial and confidential personnel.[10] Subdivision (a) of section 42723 makes it clear that managerial employees serve at-will at the pleasure of the campus President or Chancellor. But what about those employees who, like plaintiff, had already earned permanent status before becoming managers? Were they to lose their retreat rights if and when they became MPP employees? HEERA does not directly address this question. Section 42723 does.

Subdivision (c) of section 42723 says: "A [MPP] employee who had permanent status in a class prior to [1/1/84] shall retain permanent status in the class despite inclusion as a [MPP] employee." The question is, what does "prior to [1/1/84]" refer to? From the plain language and the structure of the sentence, that date is clearly part of a clause that refers to a MPP employee who had permanent status in a class prior to that date. Yet defendant claims that "prior to 1/1/84" refers to the date upon which management personnel were included in the MPP. The problem with defendant's analysis is simple: The words do not say that. The reference to 1/1/84 says nothing about, and makes no reference to, *when* prior managers, or anyone else, became MPP employees. It refers to when the employee had permanent status in a class. If he or she had permanent status prior to 1/1/84, they retained it, despite becoming a manager after 1/1/84.

---

[10] The issue here involves managerial personnel. Plaintiff never held a confidential personnel position.

Had the drafters of the regulation meant to refer only to those managers who became MPP employees on 1/1/84 (i.e., "grandfathering them in") and not to any employee who obtained a management position under the MPP after 1/1/84, they could have said so. For example, they could have simply said, "Former managerial personnel with permanent status who became MPP employees on 1/1/84 shall retain their permanent status." But the regulation says nothing of the sort.

Subdivision (d) likewise supports plaintiff's construction. That section says that MPP employees who retained their permanent status under subdivision (c) and are "placed in or promoted to" a MPP position shall retain retreat rights to the former class in which permanent status was held. If, as defendant claims, the provision was meant to apply only to those managers who obtained a MPP position on 1/1/84 but not later, it could have simply referenced MPP employees who were placed in or promoted to a MPP position *on 1/1/84*. But it did not. The sentence says nothing whatsoever about the date that an employee was placed in or promoted to management; it only says that those who retained their permanent status under subdivision (c) retain their retreat rights if placed in or promoted to an MPP position. Here, plaintiff had permanent status in a class prior to 1/1/84. She was promoted to a MPP position in 2003. There is simply no language in the regulation indicating that it does not apply to later-promoted MPP employees like plaintiff.

Defendant makes much of the word "inclusion" in subdivision (c), arguing that it relates to the date that one became a MPP employee (i.e., on 1/1/84 and not a day later). However, this is not only a strained use of that word, but it is belied by subdivision (d), which refers to persons who are "placed in or promoted to a position under the MPP. . . ." Defendant would have the regulation apply only to those employees who had permanent status in a class prior to 1/1/84 *and* who were management personnel who were placed in or promoted to a position under the MPP on 1/1/84. If for some reason the drafters had wanted to say that, they could have. Again, they did not.

Moreover, subdivision (d) provides the right to retreat to the former class in which permanent status was held. Under defendant's construction, this would mean that MPP

13

employees who were managers prior to 1/1/84 would have retreat rights to their prior management position.  This could lead to the anomalous situation where a MPP employee could be terminated and then return to his or her prior management position at the salary last received in that same job.  (§ 42723, subd. (d).)  This would hardly be a retreat.[11]  On the other hand, plaintiff's construction results in her retreating to her former nonmanagerial bargaining unit position if terminated from her MPP position.  This is consistent with section 42723 and HEERA, because both allow for permanent status in the bargaining unit positions.

Plaintiff was a CSU employee "who had permanent status in a class prior to January 1, 1984" who was then "promoted to a position under the MPP."  Under the plain language of the regulation, she "shall retain her permanent status in the class" and "shall retain retreat rights" to the former class.  Her construction of section 42723 is perfectly consistent with the plain language of the regulation.  On the other hand, defendant's construction is contrary to the plain language; requires the court to insert clauses that do not exist; and would allow managerial personnel to enjoy de facto permanent status, contrary to the requirements of the regulatory scheme.

Pursuant to the plain language of section 42723, it applied to plaintiff and she was entitled to retreat rights.

2.      Legislative and Regulatory Intent:

If the plain language of a statute or regulation is clear and unambiguous, our task is at an end and there is no need to resort to the canons of construction or extrinsic aids to interpretation.  (*Hoitt, supra*, 207 Cal.App.4th at p. 523.)  However, given the paucity of law on the regulations in question, further analysis may be both warranted and helpful.

---

**11**      Put another way, if MPP employees who had obtained permanent status as managers prior to 1/1/84 could retreat to their prior managerial position upon termination, they would make an end run around the regulation which provides that managers are at-will employees who serve at the pleasure of the campus President or Chancellor.

14

Therefore, this court looks to the legislative intent of the statutory scheme and the regulations promulgated thereunder.

It is beyond dispute that HEERA was meant to provide collective bargaining rights to nonmanagerial, nonconfidential employees and that section 42723 denied permanent status to managerial employees, who would serve at-will. It is understandable that such a regulation might be disconcerting to employees who had already obtained permanent status as managers. And it is likewise understandable that such managers would try to interpret the regulation in a way that maintained the permanent status they had earned as managers prior to 1/1/84. Nevertheless, defendant's construction of section 42723 creates a problem when it prevents nonmanagerial personnel who are promoted to MPP positions from maintaining their permanent status in their prior positions. After all, while section 42723 says that managers are at-will employees, the university also had another goal in mind: Recruiting and retaining qualified personnel. One of the key goals of the MPP was to recruit new employees to management positions. Indeed, the first objective listed in the initial MPP manual from 1/1/84 under "Objectives of the Management Personnel Plan" was "[t]o recruit and retain well-qualified managers and to enhance their management capabilities in areas such as leadership and accountability." Having a system in place which allowed such new managers to retreat to their former, permanent status bargaining unit position was one way to provide some degree of job security to applicants. A regulation that provided such retreat rights would not run afoul of HEERA or section 42723 (it would not give the manager permanent status as a manager), but it would encourage and reassure new recruits. Indeed, plaintiff testified via declaration that one of the reasons she felt comfortable working in the managerial at-will job was because she could retreat to her old, permanent status job if things did not work out.

Plaintiff's construction of the regulation furthers the key goal of recruiting and retaining well-qualified managers. Defendant's construction, on the other hand, defeats this objective. To the extent that employees were already managers, it would be unlikely that they would need an incentive to remain as managers by being allowed to retreat to a position they were already in. And as to future managers, defendant's construction

15

would remove job security by denying them retreat rights to their old jobs if things did not work out. That would hardly encourage recruiting.

Therefore, defendant's construction appears contrary to the intent of the statutory and regulatory schemes, while plaintiff's construction is consistent with them.

### 3. History and Development of Section 42723:

When interpreting statutes, courts may turn to the legislative history for enlightenment and the same applies to regulations promulgated by administrative agencies. (*Hoitt, supra*, 207 Cal.App.4th at p. 523.) The history and development of section 42723 is enlightening in terms of the intent of its drafters.

As noted above, section 42723 raised questions for managers who already had permanent status, since they would now serve at the pleasure of the campus President or the Chancellor. In this context, the vice-chancellor sent a memorandum to the President on December 21, 1983, which was entitled "The California State University Management Personnel Plan." The purpose of the memorandum was to provide information regarding the plan along with initial implementation procedures. In a section entitled "Background Information," the memo asks and answers certain questions. As to whether *present* employees would retain tenure and retreat rights (Question 4.a), the answer stated that "[a]lthough the [MPP] precludes the granting of tenure or permanent status within one of the new Administrator classes, employees will retain tenure and retreat rights that they had earned in their previous classes." Question 4.c addresses "*new* employees hired into the Plan after [1/1/84] and *without immediate CSU permanent status* in another class." (Italics added.) As to those prospective managers, they would not earn tenure or permanent status as managers – which makes sense because they had no permanent status in a previous class. But the clear implication of this question and answer is that new employees hired into the plan *with immediate CSU permanent status* in another class would retain their tenure and retreat rights.

Soon after the December 1983 memorandum was sent, the CSU MPP manual was issued, dated January 1, 1984 (the date the MPP went into effect). That document tracks

16

the development of the plan and gives an overview of its characteristics, objectives, and functions. It contains a subsection entitled "Tenure and Permanence." After reiterating that MPP employees served at the pleasure of the president, the manual went on to state: "Individuals who currently have tenure/permanent status in a class within the Management Group shall retain that tenure/permanent status so long as they remain in the same position and salary in effect January 1, 1984." This sentence seems to support defendant's construction of the regulation. But interestingly, it does not appear in the final version of the regulation. Section 42723 does not refer to "individuals who currently have tenure/permanent status in a class within the management group . . . ." Instead, it says, "A [MPP] employee who had permanent status in a class prior to [1/1/84]." In other words, the language that seems most similar to defendant's present position was not adopted in the regulation. And the language that was adopted supports plaintiff's present position. This is a further indication that plaintiff's construction is correct.

4. <u>Deference to the Agency's Interpretation of its Own Regulation</u>:

While an agency's interpretation of its own regulations are usually entitled to deference, the amount of deference is "fundamentally *situational*." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12.) "A court assessing the value of an interpretation must consider a complex of factors material to the substantive legal issues before it, the particular agency offering the interpretation, and the comparative weight the factors ought in reason to command." (*Ibid*.) For example, a court may consider whether the agency has consistently maintained the interpretation in question, especially if it is long-standing -- since " '[a] vacillating position . . . is entitled to no deference.' " (*Id.* at p. 13, quoting Cal. Law Revision Com., Tent. Recommendation, Judicial Review of Agency Action (Aug. 1995) p. 11.) When an agency's construction of a statute or regulation contradicts its original interpretation, it is not entitled to significant deference. (*Murphy v. Kenneth Cole Productions, Inc*. (2007) 40 Cal.4th 1094, 1106, fn. 7.)

17

In an arbitration arising out of a union grievance in 1994, defendant provided retreat rights under section 42723 to an employee who had not been in a managerial position until after 1/1/84.**12** Employee Lilian Gee had accepted a management position in February 1990, six years after the MPP went into effect. After being laid off in 1992, she was returned by CSU to a bargaining unit position in which she had previously attained permanent status. In reviewing CSU's position in the arbitration, it does not appear that it ever claimed – as it does here – that the regulations required managers to become MPP employees on 1/1/84 in order to be entitled to retreat rights.

In plaintiff's opposition to defendant's motion for summary adjudication she provided a declaration from former CSU employee Linda MacAllister. Ms. MacAllister had obtained permanent status in a nonmanagerial position as of March 1978. In 1989, over five years after MPP went into effect, she obtained a position as a MPP employee. On June 7, 2000, she received a letter from CSU's general counsel indicating that she had been terminated. In the letter, CSU's general counsel stated: "Because you had permanent status as an employee in a class prior to [1/1/84], you have a right to retreat to the former class in which permanent status is held." It went on to say that, if she chose to retreat, she would not be entitled to her three months' pay in lieu of notice, "because you will not be separated from the [CSU]." Thus, at least for some period of time prior to plaintiff's case, defendant took the position that employees who obtained a MPP position after 1/1/84 and were terminated some time later did have the right to retreat to their prior, premanagement positions – contrary to the position it now takes in this litigation.**13**

---

**12** The arbitrator held that CSU's conduct was improper, but only in the context of a collective bargaining agreement unrelated to this case, which superseded the regulation. In fact, the arbitrator expressly stated that he made no findings regarding the provisions of California Code of Regulations, title 5, and that any determination of the rights of MPP employees was beyond the scope of the arbitration. Thus, his findings did not address the rights of MPP employees – the issue present here.

**13** In its motion for summary adjudication, defendant provided a declaration from Pamela Chapin, in CSU's Human Resources Management Department. She claimed to be knowledgeable on the issues of compensation, benefits and retreat rights regarding

18

Defendant also argues that plaintiff's construction would "upend" the employment structure of nonmanagerial positions and result in an "endless series of bumping lower level employees." This is hardly a compelling argument. First of all, if the regulation defendant itself drafted created such a problem – which apparently it had not at the time of the 1994 arbitration, when defendant took the position that it could bump management employees to prior bargaining unit positions – it could amend or change the regulation.[14] There is no indication that any efforts have been made in that regard. Secondly, bumping and cascading of higher level employees are often part of the public education employment structure in any event. Although the parties have agreed that Education Code section 89555 does not directly apply to this case, that code section provides for retreat rights similar to the retreat rights discussed here. "In lieu of being laid off, an administrative or nonacademic employee may elect demotion or transfer to any class in which he has served as a permanent employee or to any vacancy for which he is qualified." (Ed. Code, § 89555, subd. (a).) This statute has been in effect since at least 1977 and is still on the books. Nothing appears to have been upended as a result, at least not as far as can be gleaned from the record in this case.

---

MPP employees. She asserted that "[t]he ongoing application of the MPP rules and regulations created in Title 5 from 1984 to the present has limited the retreat rights only to individuals involuntarily transitioned from the old management class as of December 31, 1983 to the new MPP class as of January 1, 1984. Only those employees who were already in management positions on or before December 31, 1983 and were thereafter classified as MPP on January 1, 1984 retained permanent status in their MPP positions and were thus granted retreat rights should they not be retained in their MPP position at a later date." This was the position defendant presented in its motion for summary adjudication, and maintains in this appeal. But defendant did not take this position in the prior arbitration. And the declaration of Ms. Chapin is factually inconsistent with the arbitrator's findings regarding Lilian Gee; the declaration of Linda MacAllister; and the June 7, 2000 letter written by CSU's general counsel.

[14] If there is a problem with a regulation, an agency can change it. It may not change it, however, "by interpreting the regulation in a manner inconsistent with its plain language." (*Motion Picture Studio Teachers & Welfare Workers v. Millan* (1996) 51 Cal.App.4th 1190, 1195.)

19

For the reasons stated above, plaintiff's construction of the regulatory scheme is correct. Defendant had an obligation to provide retreat rights to her when she was terminated from her MPP position.

C.    *The Impact of the Trial Court's Interpretation of Section 42723 on Defendant's Motion for Summary Adjudication and Subsequent Proceedings*:

The trial court granted defendant's motion for summary adjudication, concluding that section 42723 did not apply to plaintiff. As set forth above, that conclusion was in error. The motion should have been denied. But this error, by itself, does not mean the judgment must be reversed. We must look to the consequences of the court's rulings and determine their impact on the outcome of the case. "No judgment . . . shall be reversed . . . unless it shall appear from the record that such error . . . was prejudicial, and also that by reason of such error . . . the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed." (Code Civ. Proc., § 475.) This concept is embodied not only in our statutes, but in our Constitution (Cal. Const., art. VI, § 13), and has become a general principle of appellate practice. (*Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1398.)

After the court granted the motion for summary adjudication and as the case approached trial, various motions in limine and objections to evidence were brought by defendant to exclude evidence of plaintiff's retreat rights, since it had been ruled as a matter of law that she had none. The court granted these requests.

The case proceeded to trial only on the theory of retaliation (the discrimination claims having been abandoned). No significant portion of the reporter's transcript of the evidence presented to the jury was prepared or presented as part of the record on appeal. Indeed, plaintiff does not attack the verdict itself or the resolution of the factual issues. She has not demonstrated that the erroneous ruling on the motion for summary adjudication was prejudicial in terms of the jury verdict. Since there was no showing of

20

reversible error in the judgment regarding the retaliation claim, it is affirmed to that extent.

D.      *The Impact of the Trial Court's Rulings on Plaintiff's Claim for Retreat Rights*:

As to plaintiff's claim for retreat rights, there can be no doubt that the trial court's ruling on the motion for summary adjudication was prejudicial. Granting the motion "completely disposed" of this claim.

E.      *Exhaustion of Administrative Remedies*:

Defendant contends that plaintiff's claims are barred because she failed to exhaust her administrative remedies. Plaintiff asserts that this argument has been waived because it is being raised for the first time on appeal. While defendant did not raise this issue to the trial court in its motion for summary adjudication, the issue was raised when defendant demurred to the third amended complaint. Therefore, the court will address it here.

Plaintiff alleges that she filed a complaint regarding discrimination with the EEOC on December 27, 2007. The claim was denied, and on January 2, 2008, she received a right-to-sue letter from the EEOC pursuant to Government Code section 12965, subdivision (b). According to plaintiff, this was sufficient in terms of exhausting her administrative remedies. However, whether it was sufficient as to her retreat rights need not be determined by this court because, for the reasons stated below, defendant's argument lacks merit when applied to managerial personnel under the MPP.

Defendant bases its argument on Education Code section 89539 which governs the appointment, layoff, and dismissal of employees and provides them with due process. Section 89539 sets forth the administrative remedies to be exhausted, in certain circumstances, before a former employee can seek relief in the judicial forum. Defendant contends that plaintiff did not exercise her rights or duties pursuant to section 89539 and therefore the superior court has no jurisdiction to act on her claim.

21

But by its terms, Education Code section 89539 applies to employees "dismissed, suspended, or demoted *for cause* . . . ." (Subd. (a)(1), italics added.) The record is devoid of any indication that plaintiff was dismissed for cause.[15] Instead, she was terminated from her at-will management position. As such, section 89539 does not apply. Moreover, when it comes to management personnel, the MPP regulations themselves contain the procedures for addressing employee complaints or seeking reconsideration of any adverse personnel decision. Section 42728 states: "The Chancellor or the President . . . may prescribe an informal means of hearing complaints from [MPP] employees . . . . The informal procedures so prescribed shall be the *exclusive administrative remedy* available to a [MPP] employee to address employee complaints or to seek reconsideration of any personnel decision allegedly adverse to the interests of the employee." (Italics added.) On June 26, 2008, plaintiff wrote to defendant's President, among other things, asked to institute section 42728 as her exclusive administrative remedy. Defendant refused to reconsider, and terminated her shortly thereafter.

Lest there be any doubt that California Code of Regulations section 42728 (and not Ed. Code § 89539) applies to MPP employees serving at-will, the regulatory scheme defines MPP employees as those designated as "management" or "supervisory" in accordance with HEERA and defines their rights and responsibilities in subchapter 7 of the regulations. These regulations supersede any rules that may have applied to them prior to becoming MPP employees, when they may have been referred to as administrative, academic, or nonacademic employees. (§ 42700, subd. (bb).) These previous designations are "relevant only when a MPP employee exercises rights to retreat to a position in which permanent status or tenure was held prior to 1/1/84." Section 42700, subdivision (bb) goes on to state: "*Only after reassuming such position shall the employee assume any rights or duties associated with administrative, academic or*

---

**15** The definitions, requirements, and parameters applying to "for cause" dismissals are addressed in Education Code sections 89530, 89535, and 89538. Nothing in the record suggests that these provisions were applicable to, or employed in, plaintiff's case.

*nonacademic status*." (Italics added.) Thus, any rights or duties that plaintiff might have been obligated to exhaust under Education Code section 89539 would only arise once she *reassumed* the bargaining unit position she had previously held. Since defendant refused to honor her retreat rights, she never reassumed that position. Therefore, no such rights or duties arose.

In section 42728, the regulations prescribe the "exclusive administrative remedy" for MPP employees seeking reconsideration of personnel decisions adverse to their interests. Plaintiff sought reconsideration under that section. Defendant denied her request and terminated her, without providing her the opportunity to exercise her retreat rights to a position where more formal administrative remedies applied. Under the circumstances, plaintiff's efforts to obtain an administrative remedy were sufficient.

## DISPOSITION

The judgment in favor of defendant entered on July 10, 2012, reflects the jury's finding on plaintiff's claim for retaliation, and to that extent it is affirmed. However, to the extent the judgment reflects a finding against plaintiff on her claim for retreat rights without providing her an opportunity to have it heard on the merits, it is reversed and

/ / /

/ / /

/ / /

/ / /

23

remanded for further proceedings consistent with this opinion.  Plaintiff is awarded her costs on appeal.


                                                    KUSSMAN, J.[*]

WE CONCUR:



            FLIER, ACT. P. J.



            GRIMES, J.

_____

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.