Filed 9/20/16

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TRENT MILLS, an Incompetent Person, etc., | C072644 |
| Plaintiff and Appellant, | (Super. Ct. Nos. 34-2009-00048359-CU-BC-GDS & 34-2010-00085311-CU-IC-GDS) |
| v. | |
| AAA NORTHERN CALIFORNIA, NEVADA AND UTAH INSURANCE EXCHANGE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge.  Affirmed.

Farmer Smith & Lane and Blane A. Smith for Plaintiff and Appellant.

Coddington, Hicks & Danforth, R. Wardell Loveland and Carrie Dupic Huynh for Defendant and Appellant.

---

[*]  Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts III and IV.

1

Defendant insurance company denied uninsured motorist coverage to a third party beneficiary injured in an automobile accident because it had cancelled the policy before the accident occurred. The third party sued, and the insurer sought summary judgment. The third party opposed, contending the cancellation was invalid because a written notice seeking information sent by the insurer to the insureds prior to cancellation was unreasonable as a matter of law, and disputed facts existed as to whether the insurer had mailed the notice of cancellation and actually cancelled the policy. The trial court granted summary judgment, and we affirm.

FACTS AND PROCEDURAL HISTORY

California law grants an insurer the right to cancel an automobile insurance policy prior to its expiration due to "a substantial increase in the hazard insured against." (Ins. Code, § 1861.03, subd. (c)(1).)

A "substantial increase in the hazard insured against" occurs when, among other events, the insured refuses or fails to provide the insurer, "within 30 days after reasonable written request to the insured, information necessary to accurately underwrite or classify the risk." (Cal. Code Regs., tit. 10, § 2632.19(b)(1).) The written request for information must inform the insured "his or her failure to provide the requested information within the time required may result in the cancellation or nonrenewal of his or her policy." (*Ibid*.)

Defendant AAA Northern California, Nevada and Utah Insurance Exchange (AAA) issued an auto insurance policy to plaintiffs Jeff and Denise Fields for an annual period commencing March 18, 2004. The policy identified Jeff Fields, Denise Fields, and their daughter, plaintiff Krystal Fields, as the insured drivers. It granted AAA the right to cancel the policy for any reason permitted by California law by mailing notice to the Fieldses no less than 20 days prior to the date of cancellation.

2

On February 5, 2005, Jeff and Denise Fields's son, Patrick, collided with a parked vehicle while driving one of the cars insured under the policy. Patrick was not listed as an insured driver on the policy at that time.

AAA renewed the policy on March 18, 2005, for one year. However, by letter dated March 23, 2005, AAA informed Jeff and Denise Fields it sought information it claimed was necessary to underwrite their policy accurately. It offered them the opportunity to exclude Patrick from coverage by completing and returning an enclosed form. Alternatively, if they wanted to add Patrick to the policy or if they had other questions, they were to call AAA. The letter stated that if the Fieldses did not respond by April 22, 2005, AAA would cancel their policy. We address the letter in greater detail below.

AAA received no response to its request for information from the Fieldses.

By letter dated April 28, 2005, AAA notified the Fieldses it was cancelling their policy effective May 28, 2005. The decision to cancel the policy was "based on the refusal or failure to provide necessary information to accurately underwrite your policy following the request for the same." AAA again received no response from the Fieldses.

On July 6, 2005, plaintiff Krystal Fields and her passenger, plaintiff Trent Mills, were injured in an automobile accident. Krystal was driving a car her parents had insured under their AAA policy. An uninsured motorist drove the other car. Mills suffered severe injuries, including traumatic brain injury and multiple fractures. He was in a coma for six weeks and suffered permanent cognitive impairments.

Krystal tendered an uninsured motorist claim to AAA under her parents' policy. AAA denied the claim because it had cancelled the policy prior to the accident.

Mills filed a complaint for personal injuries against the driver and registered owner of the other uninsured vehicle as well as Krystal and her parents. The Fieldses tendered the suit to AAA for defense and indemnity. AAA denied the tender because the policy was not in effect at the time of the accident.

Mills dismissed Jeff and Denise Fields from his action prior to trial, and the court found in favor of Krystal. However, the court granted Mills a default judgment in excess of $12.7 million against the driver and owner of the other uninsured vehicle. Mills requested uninsured motorist benefits from AAA and demanded AAA arbitrate his claim against the Fieldses' policy. AAA denied the demand, again because it had canceled the policy before the accident occurred.

In consolidated actions, the Fieldses and Mills sued AAA. Krystal Fields and Mills alleged AAA breached its insurance policy with the Fieldses when it denied their claims for uninsured motorist coverage. Jeff, Denise, and Krystal Fields alleged AAA breached its insurance policy by refusing to defend them against Mills's action. All plaintiffs alleged AAA breached the implied covenant of good faith and fair dealing. All plaintiffs sought punitive damages.

AAA filed for summary judgment. It contended it lawfully cancelled the Fieldses' policy prior to the accident due to the Fieldses' failure to provide necessary information AAA had requested in order to underwrite the policy accurately. AAA introduced evidence showing it forwarded the March 23 request for information and the April 28 notice of cancellation to the Fieldses, those notices complied with all statutory requirements imposed on them, and it acted reasonably in compliance with the implied covenant of good faith and fair dealing.

Plaintiffs opposed the motion for summary judgment, and they also filed a motion for summary adjudication against AAA's affirmative defense that it lawfully cancelled the insurance policy prior to the accident. They contended AAA had not lawfully cancelled the policy because AAA's request for information and notice of cancellation failed to comply strictly with statutory requirements, the request for information was not a " 'reasonable written request' " because it did not actually request any information, and AAA had not established any facts showing there had been a substantial increase in the hazard insured against. Plaintiffs further claimed they did not receive AAA's letters, and

4

contested facts existed as to whether AAA had actually mailed the letters and cancelled the policy. Alternatively, plaintiffs asked the court to deny AAA's motion or continue the hearing to allow them time to conduct further discovery on their punitive damages claim, as AAA had allegedly obstructed plaintiffs' attempts to depose AAA personnel over a period of 17 months.

The trial court granted summary judgment in favor of AAA and denied plaintiffs' motion for summary adjudication. It ruled that undisputed facts demonstrated AAA lawfully cancelled the insurance policy prior to the accident. AAA requested information from the Fieldses it claimed it needed in order to underwrite the insurance policy, the written request was reasonable, and the Fieldses did not respond to it. The court found no disputed issues of material fact regarding the adequacy of the request for information and whether AAA actually mailed the notice of cancellation and cancelled the policy. Because there was no breach of contract, the court found there could be no breach of the implied covenant. The court also refused to continue its consideration of the motion pending further discovery on the issue of punitive damages.

Only plaintiff Mills appeals from the trial court's judgment. He contends the court erred in its judgment because:

1. The March 23, 2005, written request for information was not, as a matter of law, a reasonable written request to secure information necessary for AAA to underwrite the risk accurately;

2. Triable issues of material fact exist regarding whether AAA actually sent the notice of cancellation and whether the policy was actually cancelled as of the date of the accident;

3. Triable issues of material fact exist regarding AAA's alleged breach of the implied covenant; and

5

4. The trial court abused its discretion by not continuing the hearing on the punitive damages claim as AAA had obstructed all of plaintiffs' attempts to depose witnesses.

## DISCUSSION

### I

### *Standard of Review*

Our scope of review is the same as the trial court's, and we exercise our independent judgment. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334; (*Starzynski v. Capital Public Radio, Inc.* (2001) 88 Cal.App.4th 33, 37.) A trial court must grant summary judgment " 'if all the papers submitted show' that 'there is no triable issue as to any material fact' ([Code Civ. Proc.,] § 437c, subd. (c))—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations]—and that the 'moving party is entitled to a judgment as a matter of law' (Code Civ. Proc., § 437c, subd. (c)). . . . In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom ([Code Civ. Proc.,] § 437c, subd. (c)), and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.)

In determining whether there is a triable issue of material fact, we consider all the evidence set forth by the parties except that to which objections have been made and properly sustained. (Code Civ. Proc., § 437c, subd. (c); *Guz v. Bechtel National, Inc., supra,* 24 Cal.4th at p. 334.)

### II

### *Reasonableness of the Request for Information*

Mills argues the trial court erred in granting summary judgment because the request for information, contrary to governing regulation, was not a reasonable request that sought information necessary for AAA to underwrite the risk accurately. He

6

contends the request was not a reasonable request as a matter of law because it did not request any specific information, and, in particular, it did not request any information AAA actually needed to determine its risk. We disagree with Mills's contention. The request for information was a reasonable request.

In 1988, voters passed Proposition 103, which made "numerous fundamental changes in the regulation of automobile and other types of insurance." (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 812, fn. omitted.) One of those changes prohibited an auto insurer from cancelling an insurance policy prior to its expiration date except on certain limited grounds. As already mentioned, one of those grounds allows an insurer to cancel an auto insurance policy due to "a substantial increase in the hazard insured against." (Ins. Code, § 1861.03, subd. (c)(1).) The Insurance Code does not define what constitutes "a substantial increase in the hazard insured against."

A regulation promulgated by the Department of Insurance defines what constitutes a "substantial increase in the hazard insured against." Such an increase occurs when, among other events, the insured refuses or fails "to provide to the insurer, within 30 days after reasonable written request to the insured, information necessary to accurately underwrite or classify the risk." (Cal. Code Regs., tit. 10, § 2632.19(b)(1) (hereafter section 2632.19).) Other than to require the written request to inform the insured in English and Spanish that "his or her failure to provide the requested information within the time required may result in the cancellation or nonrenewal of his or her policy," (*ibid*), the regulation imposes no requirement on what a request for information must contain or request in order to be considered reasonable. The parties have not found any other authority directly on point, and neither have we.

To determine what a "reasonable written request" is, we rely first on the regulation's plain language. (*Butts v. Board of Trustees of the California State University* (2014) 225 Cal.App.4th 825, 835 (*Butts*).) The term "reasonable" has many meanings, but those most appropriate here are: "Within the limits of what it would be rational or

7

sensible to expect; not extravagant or excessive; moderate. . . . [I]n accordance with reason; not irrational, absurd, or ridiculous; just, legitimate; due, fitting. . . . Sufficient, adequate, or appropriate for the circumstances or purpose; fair or acceptable in amount, size, number, level, quality, or condition." (Oxford English Dict. (3d ed. 2009) at http://www.oed.com/view/Entry/159072?redirectedFrom=reasonable#eid [as of Sept. 20, 2016].)

The term "reasonable" has so many meanings, we also look to the voters' intent for the statutory scheme to define the term's meaning in section 2632.19. (See *Butts, supra,* 225 Cal.App.4th at p. 838.) The voters enacted Proposition 103 "to protect consumers from *arbitrary* insurance rates and *practices*, to encourage a competitive insurance marketplace, to provide for an accountable insurance commissioner, and to ensure that insurance is fair, available, and affordable for all Californians." (Prop. 103, § 2, Stats. 1988, p. A-276, italics added.) The initiative states it "shall be liberally construed and applied in order to fully promote its underlying purposes." (Prop. 103, § 8, Stats. 1988, p. A-290.)

Thus, to be a "reasonable" written request for information necessary to underwrite or classify the risk accurately, the request must be rational, appropriate for the circumstance, and necessary to the insurer's ability to evaluate the risk of offering the policy. The request cannot be arbitrary or unrelated to the insurer's need to reevaluate the risk it incurs.

With these concepts in mind, we turn to the written request for information AAA sent to the Fieldses. The body of the request reads in full:

"It has been brought to our attention that we do not have the necessary information to list a driver who resides in your household or has regular use of your vehicle(s).

"All licensed operators in your household or who have regular usage of your vehicle(s) are potential exposures, and we must ask for certain underwriting information

8

to accurately underwrite your automobile policy to determine the qualification and rating of your policy.

> "We do not have all the information necessary to accurately underwrite your automobile insurance policy.  We are required to advise you in writing that if you fail to provide the necessary information requested within 30 days of the above date, your policy will be cancelled.
>
> "No hemos obtenido toda la informacion necesaria para subscribir adecuadamente la poliza de seguro de su automovil.  Nuestra empresa esta obligada a notificarle por escrito que, de no suministrar los datos requiridos antes del termino de 30 dias a partir de la fecha arriba indicada, su poliza sera cancelada.

"If you choose not to provide the information, you can exclude the driver from your policy.

"To exclude PATRICK FIELDS (son), sign, date, and return the enclosed form in the envelope provided.  Please read the endorsement carefully.  There is no coverage afforded under the policy while any motor vehicle is being used or operated by an excluded person.

"If the required information or the exclusion is not provided to us by 04/22/2005 your policy will be mid term cancelled due to a substantial increase in the hazard insured against.

"If you choose to add the driver or have any questions, please contact the Sacramento – Madison District Office at (916) 331-7610 or the Member Service Center at 800-922-8228."

Included with the letter was a form for the Fieldses to use if they chose to exclude Patrick from their policy.

This letter was a reasonable written request for information necessary to underwrite or classify AAA's risk. There is no evidence showing the letter was arbitrary or unrelated to AAA's needs. It arose from having a car AAA insured incur damage in an accident by a family member who was not named on the policy. It was reasonable for AAA to attempt to seek information to determine whether Patrick would be a regular driver of a family vehicle or, if not, to seek to have Patrick excluded from coverage.

Mills contends the written request is unreasonable because it does not contain a request for the information Mills claims AAA needed in order to evaluate its risk from Patrick's use of the family vehicles. He argues the insurance policy authorized AAA to cancel the policy if the driver's license of any operator who either lives in the insured's household or customarily operates the insured's autos is suspended or revoked. Thus, Mills argues, in order to evaluate its risk regarding Patrick under the terms of the policy, AAA had to know only whether Patrick resided with his parents, held a driver's license, and regularly used their cars. He claims the written request was not reasonable because it did not specifically ask for that information. Indeed, he asserts the request does not request any specific information at all.

We disagree with Mills's assertion. Section 2632.19 does not require a written request to contain certain questions or identify specific information requested. Rather, it requires the written request to be reasonable, and the request here satisfies that requirement. The writing asks if the Fieldses intend to include or exclude Patrick from coverage. If the Fieldses were willing to exclude Patrick from coverage, AAA would not likely need any additional information, as its risk would remain unchanged. If, however, the Fieldses were not willing to exclude Patrick from coverage, AAA would need additional information. Hence, AAA asked the Fieldses to call AAA to include Patrick in their coverage or ask other questions. Had the Fieldses made that call, AAA then could

10

request the additional information Mills suggests it would need to determine whether to continue underwriting the policy.

Mills also asserts AAA's use of the letter somehow failed to comply strictly with Insurance Code provisions that govern cancellation of insurance policies. Mills correctly states that policy cancellation "can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation" (*Mackey v. Bristol West Ins. Service of Cal., Inc.* (2003) 105 Cal.App.4th 1247, 1258), and with the terms of the policy itself. (*Lee v. Industrial Indemnity Co.* (1986) 177 Cal.App.3d 921, 924.) However, as shown above, there are no statutory or regulatory requirements imposed on the written request for information except that it be reasonable, and Mills has not alleged AAA's written request somehow violated the terms of AAA's policy with the Fieldses.

Based on the undisputed facts, we cannot say AAA sent the letter for an arbitrary purpose or sought irrelevant or unnecessary information unrelated to its analysis of risk under the particular circumstances. The letter was a reasonable written request within the meaning of section 2632.19, and the trial court did not err in finding so as a matter of law.

III

*Issues of Fact as to the Notice of Cancellation's Mailing and the Status of Cancellation*

Mills contends the trial court erroneously granted summary judgment because contested issues of material fact exist as to whether AAA actually mailed the April 28 notice of cancellation and whether the cancellation became effective. We disagree, as uncontested facts establish AAA sent the notice of cancellation to the Fieldses and later cancelled their policy.

A. *Notice of cancellation*

We address first the facts indicating AAA mailed the notice of cancellation to the Fieldses. To prove it mailed the notice of cancellation, AAA introduced the sworn declarations of three employees. Tina Tang declared she printed 10 notices of

11

cancellation from AAA's mechanized letter request system. She inserted each of the 10 letters into 10 separate AAA envelopes, each addressed to 10 different insureds; one of which was the Fieldses at the address listed in the policy. After she inserted each cancellation letter "into a properly addressed envelope," she placed each of the 10 envelopes in a special mail bin for cancellation letters. She also prepared and placed in the same bin a document known as a Proof of Mailing – Report Listing for April 28, 2005 (proof of mailing), which listed the names and addresses of each of the insureds whose policy was being cancelled. The Fieldses were listed on the proof of mailing.

A second employee, Douang Rintharamy, declared she used a machine to seal and affix the correct postage amount on each of the 10 envelopes. She cross-referenced the addressed envelopes with the list on the proof of mailing. One of those envelopes was addressed to the Fieldses. She then affixed a postage meter stamp reflecting the total postage for all of the envelopes onto the proof of mailing.

A third employee, Calvin Huey, declared he took the envelopes and the proof of mailing to the United States Post Office at Fox Plaza in San Francisco. There, the post office clerk took the envelopes, reviewed the proof of mailing, and "round-date stamped" the report to note receipt of the envelopes.

Certain rules determine whether the facts show the notice of cancellation was mailed. First, "[p]roof of mailing of notice of cancellation . . . to the name insured at the address shown in the policy or to the named insured's latest known address, shall be sufficient proof of notice." (Ins. Code, § 664.) AAA's policy with the Fieldses also provided that "[p]roof of mailing a notice is proof of notice." Second, "[t]he affidavit of the person who mails the notice, stating the facts of such mailing, is prima facie evidence that the notice was thus mailed." (Ins. Code, § 38.) To prove the notice was mailed, the witness's affidavit must describe the following steps: "(1) the witness placed a notice of cancellation of the subject policy in an envelope, (2) the envelope was addressed to [the insured] at the declared address, (3) the envelope was affixed with the proper postage,

12

and (4) placed in the United States mail at a certain location." (*Preis v. American Indemnity Co.* (1990) 220 Cal.App.3d 752, 759-760 (*Preis*).)  AAA's employee declarations satisfied the *Preis* requirements.

Mills contends AAA's employee declarations do not satisfy *Preis* because Tang did not testify that she matched the name and address on each letter with the envelope that bore the same name and address.  Tang testified she inserted each cancellation letter into a "properly addressed envelope."  This indicates she inserted each letter into its corresponding envelope.

AAA's evidence satisfied the *Preis* requirements and shifted the burden onto Mills to dispute these material facts with competent evidence.  Mills submitted the declarations of Jeff and Denise Fields, who both declared they did not receive either the March request for information or the April notice of cancellation.  However, neither Jeff nor Denise made their declarations under penalty of perjury.  (See Code Civ. Proc., § 2015.5; *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 612 [declarations not made subject to perjury law are defective].)  AAA objected to both declarations, and the trial court sustained the objections.  We, too, do not consider the unsworn declarations.

Mills also submitted copies of electronic notes placed in AAA's underwriting file for the Fieldses that concerned the adjustment of the claims made on the policy after the accident.  The notes indicate the policy cancellation was entered on June 8, 2005, and the records reflect a pro-rata credit was given to the Fieldses on the same day.  Darold Cornell, a field casualty specialist assigned to adjust plaintiffs' claims, and Kenneth Daack, a litigation examiner, both wrote file notes indicating that from their review of the file, the Fieldses had been sent a request dated March 23, 2005, advising the Fieldses to exclude Patrick, and had been sent a notice of cancellation dated April 28, 2005, advising the policy would be cancelled on May 28, 2005.  Cornell wrote the notice of cancellation

13

had been sent by certified mail.  He spoke with another employee who said she had proof of service because the Fieldses had signed for the letter.

A few days later, Cornell noted there was a document in the file from Miguel Hernandez at the Sacramento records center that states "no cancellation letter sent out," followed by a ledger with several claim numbers, and " 'this claim' not being one of them."  Cornell was also informed that AAA does not mail cancellation notices by certified mail or receive proof of receipt from the recipient.  AAA is required only to show proof of mailing, and Cornell received the proof of mailing that showed the cancellation notice had been sent to the Fieldses.  Cornell believed there was a discrepancy between Hernandez's notes and the proof of mailing he received from personnel in underwriting.  He called Hernandez and underwriting and asked them to contact each other to clarify the mailing of the cancellation letter and to let him know their conclusion.  The record does not indicate whether that occurred.  However, the record does indicate AAA denied the Fieldses' claim 16 days after Cornell asked Hernandez and underwriting to contact each other.

We agree with the trial court that no disputed issue of material fact exists concerning whether AAA mailed the notice of cancellation to the Fieldses.  The cryptic note found by Cornell and attributed to Hernandez does not create a triable issue over whether AAA mailed the notice of cancellation to the Fieldses.  The three people who actually mailed the notice of cancellation attested to their actions under oath and penalty of perjury.  There is no evidence in the record addressing the accuracy of what Cornell said he found written by Hernandez.  That the notes were true and correct copies of what was in AAA's file does not establish the notes' contents were true, particularly when opposed by the sworn testimony of the three percipient witnesses.  Mills thus failed to introduce competent evidence disputing whether AAA mailed the notice of cancellation to the Fieldses.

14

B.    *Status of cancellation*

Mills also claims disputed facts exist concerning whether the insurance policy was actually cancelled as of the date of the accident. He cites to a policy declarations page issued by AAA and dated May 2, 2005, that states the policy period is from May 5, 2005, to March 18, 2006. Of course, the policy declarations page was issued before the cancellation became effective, and nothing in the document suggests cancellation was either made or rescinded. The policy declarations page does not establish the policy was in effect as of the date of the accident.

Mills also introduced a billing statement dated March 16, 2006. The statement indicates that as of June 2, 2005, there was a pending cancellation notice. Mills correctly argues that, according to the statement, this cancellation notice was rescinded on June 6, 2005. However, the statement also indicates the policy was in fact cancelled. It lists the "cancel date" as May 28, 2005. It also shows that on June 8, 2005, two days after the "rescindment" emphasized by Mills, there was a "Pro-Rate Cancellation," resulting in a credit to the Fieldses in the amount of $3,310.00. A finance charge remained past due as of June 24, 2005, and someone paid that in full at a AAA office on July 8, 2005, two days after the accident. That the finance charge remained past due after the accident occurred is no evidence that AAA had not cancelled the policy on May 28, or June 8, 2005. An insurer's acceptance of premiums after issuing a notice of cancellation does not affect the cancellation's validity. (*Adams v. Explorer Ins. Co.* (2003) 107 Cal.App.4th 438, 447-448.) Mill's evidence thus establishes the insurance policy was in fact cancelled as of the date of the accident.

Because we conclude the written request for information was reasonable and no triable issues of material fact exist regarding the mailing of the notice of cancellation and the status of cancellation at the time of the accident, we conclude the policy was cancelled as of the date of the accident, and Mills cannot recover on his breach of contract claim. Furthermore, because no benefits are due Mills under the policy, his

15

claim for breach of the implied covenant of good faith and fair dealing also fails as a matter of law. (*Schwartz v. State Farm Fire & Casualty Co.* (2001) 88 Cal.App.4th 1329, 1335.)

## IV

### *Decision Not to Continue the Hearing*

Mills contends the trial court erred when it refused to continue the hearing to allow him time to seek additional discovery on the issue of punitive damages. He argues the court should have continued the hearing because he established that essential evidence, in the form of Cornell and Hernandez's potential testimony about the notice of cancellation, may have existed but could not have been presented because of AAA's obstruction. His counsel and AAA's counsel were never able to agree to deposition dates of AAA employees and former employees, including Cornell, because AAA's counsel asserted over a period of 17 months they were unavailable to attend those depositions. Mills filed a motion for a protective order to compel production of the witnesses, but he later withdrew the motion upon the trial court's continuing the trial date and the discovery cut-off date. He asserts the court should have continued the hearing to allow him to obtain that evidence, as it related to punitive damages.

Mills submitted his withdrawn motion and its attachments as evidence of AAA's obstruction in support of his request for a continuance. AAA objected to the evidence as hearsay, and the trial court sustained the objection. Mills does not challenge the court's evidentiary ruling. Thus, the evidence Mills submitted to show AAA's obstruction and his diligence in seeking discovery was not before the trial court, nor is it before us.

Mills admits it appears the trial court considered the issue of punitive damages as moot after it found no breach of contract. We find the issue moot as well. Because there was no breach of the insurance policy's implied covenant of good faith and fair dealing, there can be no award of punitive damages. (Civ. Code, § 3294; *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 43-44.)

16

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to defendant AAA.  (Cal. Rules of Court, rule 8.278(a).

        NICHOLSON    , Acting P. J.

We concur:

      MURRAY      , J.

      DUARTE      , J.

17