Filed 4/28/14  East Valley Pawn v. San Bernardino Cty. Dept. of Agriculture Weights and Measures CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| EAST VALLEY PAWN et al., | |
| Plaintiffs and Appellants, | E056243 |
| v. | (Super.Ct.No. CIVDS1017375) |
| SAN BERNARDINO COUNTY DEPARTMENT OF AGRICULTURE, WEGHTS & MEASURES, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge.  Affirmed.

The Kushner Law Firm, Michael B. Kushner and Robert Paredes, for Plaintiffs and Appellants.

Jean-Rene Basle, County Counsel, Adam Ebright, Deputy County Counsel, for Plaintiff and Respondent.

The issue presented in this case is whether a business that purchases gold from individuals is required to have the scales in the business certified by the County Department of Agriculture/Weights and Measures. After hearings at administrative agencies, East Valley Pawn, Sold for You, John Cullen, and Jeff Sessums (collectively appellants), petitioned the trial court for (1) a writ of administrative mandate directing the county administrative agency to dismiss its proceedings against appellants, (2) an injunction restraining the administrative agency from requiring appellants to register and calibrate their scales, and (3) attorneys' fees. The trial court denied appellants' writ petition and dismissed their case with prejudice in favor of the administrative agency.

Appellants raise three issues on appeal. First, appellants contend the trial court erred by denying the writ petition and dismissing their case because Business and Professions Code section 12500.5,[1] which concerns county-approved scales, does not apply to businesses that purchase gold from consumers. Second, appellants contend the trial court erred because section 12500.5 does not apply to East Valley Pawn and Sold for You (collectively Gold Buyers). Third, appellants assert they should be awarded their attorneys' fees and costs on appeal because appellants are enforcing "an important right affecting the public interest." (Code Civ. Proc., § 1021.5.) We affirm the judgment.

---

[1] All subsequent statutory references will be to the Business and Professions Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL HISTORY

### A.    BUSINESS PRACTICE

John Cullen and Jeff Sessums (collectively "owners") own and operate Gold Buyers.  At Gold Buyers, customers try to sell gold items for as much money as possible, while Gold Buyers try to purchase the customers' gold for as little money as possible.  When a customer brings in a gold item, Gold Buyers perform a "scratch test" to determine if the item contains gold, and then weighs the item (1) to determine the maximum offer price, and (2) for purposes of describing the item in their inventory.

After the scratch test and weighing, Gold Buyers make an offer to the customer, and the customer and Gold Buyers negotiate.  The ultimate price Gold Buyers pay to the customer is affected by the amount the customer is willing to accept for the item.  For example, two customers could offer Gold Buyers identical rings.  Customer-A could receive $100 for the ring, while customer-B receives $250.  After Gold Buyers purchase gold from a customer, Gold Buyers sell the gold to a smelter—Gold Buyers do not sell the gold to other customers.

### B.    NOTICES OF VIOLATION

On September 22, 2009, Agricultural Standards Officer Russell Bice and Supervising Agricultural Standards Officer Steven Mackenzie, from the San Bernardino County Department of Agriculture/Weights and Measures (the Department), visited Sold For You and East Valley Pawn.  At both stores, the officers introduced themselves and explained they were at the business to visually inspect its scale.  The officers found the scales were "unapproved device[s]," and informed the owners "the scale[s] shall not

be used for commercial purposes." (§ 12500.5.)[2] The owners were present at East Valley Pawn, and told the officers the scales were not used to determine the price paid to the customer.

On December 2, the two officers returned to Gold Buyers' stores with information about scale regulations. At East Valley Pawn, the owners informed the officers that Gold Buyers do not purchase gold based on weight and the scale is only used for inventory purposes. On December 16, the officers again returned to Gold Buyers' stores and issued each store a Notice of Violation "for using an unapproved device in order to determine a weight." The employee at Sold For You and the owners at East Valley Pawn refused to sign the notices. The owners again asserted "the scale was used for inventory control only."

On January 27, 2010, Agricultural Standards Officer Denise Crowley went to Sold For You in an undercover capacity. Officer Crowley presented gold to sell. The Sold For You employee checked the gold, weighed it in front of the officer, and then offered $182. On that same day, Deputy Agricultural Commissioner Grif Thomas went

---

[2] Section 12500.5 provides: "The secretary by rules and regulations shall provide for submission for approval of types or designs of weights, measures, or weighing, measuring, or counting instruments or devices, used for commercial purposes, and shall issue certificates of approval of such types or designs as he or she shall find to meet the requirements of this code and the tolerances and specifications thereunder. [¶] It shall be unlawful to sell or use for commercial purposes any weight or measure, or any weighing, measuring, or counting instrument or device, of a type or design that has not first been so approved by the department; provided, however, that any such weight, measure, instrument, or device in use for commercial purposes prior to the effective date of this act may be continued in use unless and until condemned under the provisions of this code."

to East Valley Pawn in an undercover capacity. Officer Thomas presented gold to sell. The East Valley Pawn employee said, "'Let me weigh it,'" and took the gold to a back room. Officer Thomas moved to a location where he could observe the employee. The employee tested the items for the presence of gold and then placed the items on an object that appeared to be a scale. After writing numbers on a small envelope, the employee offered the officer $115.

On February 9 and March 2, Officers Mackenzie and Bice returned to Gold Buyers' stores for re-inspections and found the unapproved scales were still being used. The Department issued notification letters to the owners, reflecting the Department planned to fine Sold For You and East Valley Pawn $350 each for violating section 12500.5—using an unapproved device for commercial purposes. The letters also presented information regarding the procedure for requesting a hearing. Appellants retained a lawyer and requested hearings. In the hearing requests, appellants asserted section 12500.5 does not apply to Gold Buyers because they do not weigh the gold for "any 'commercial purpose.'"

C.    COUNTY ADMINISTRATIVE HEARING

The hearing took place on April 22, at the County Agricultural Commissioner's Office. At the administrative hearing, the Department's hearing officer determined the Sold For You case involved the same facts and legal issues as the case involving East Valley Pawn, since both businesses were owned and operated by the same people. The parties stipulated the Department's hearing officer could issue a decision concerning both Sold For You and East Valley Pawn. On April 27, the Department's hearing

5

officer issued a decision reflecting appellants violated section 12500.5 and ordering appellants to pay the $350 fines. The hearing officer reasoned the scales were used for a commercial purpose when appellants weighed the gold to create a maximum purchase price. Since the scales were not inspected and tested, appellants violated section 12500.5.

    D.    <u>ADMINISTRATIVE REVIEW HEARING</u>

Appellants appealed to the Secretary of the California Department of Food and Agriculture (CDFA). The administrative review was conducted by the CDFA's general counsel (General Counsel). In the administrative review, appellants asserted Gold Buyers' scales do not need to be certified because the ultimate price they pay a customer for gold does not correlate to the weight of the item. For example, they do not pay $25 per gram[3] of gold. Instead, they pay the lowest price the customer will accept. The Department asserted Gold Buyers are subject to scale regulations because Gold Buyers "weigh gold items in order to establish a bottom line price for negotiating the possible purchase."[4]

---

**3** We use "gram" for ease of reference, as opposed to the more gold-specific weights of Troy ounce or pennyweight.

**4** We infer that in this context "bottom line price" refers to the maximum price Gold Buyers would be willing to pay. Since Gold Buyers intent is to have every sale be for as little as possible, Gold Buyers would set a maximum price (as opposed to a minimum price). We find additional support for this inference in appellants' opening brief, in which they write, "[W]eight has nothing to do with the price offered by Appellants, other than to establish a benchmark from which to determine not only the *maximum* price Appellants will offer . . . ." (Italics added.)

6

Since the facts were undisputed, the General Counsel determined the case involved a purely legal issue—whether section 12500.5 applies to Gold Buyers. The General Counsel found Gold Buyers "did not use the scale to determine a *precise* weight," but the General Counsel concluded the statute did not require a scale to be used for purposes of calculating a *precise* weight/price transaction, e.g., $2 for one pound of apples—the statute only required the scale to be used to determine the weight of an item that is sold on the basis of weight. The General Counsel concluded appellants "purchased the gold based upon its weight" because appellants use the scales to determine a maximum purchase price.

In regard to policy, the General Counsel concluded applying the statute to Gold Buyers protected consumers "because the weight influences the bottom line price determination which covertly sets the floor in negotiations. An inaccurate scale that acts to the detriment of prospective purchasers results in a lower bottom line price calculation by appellants and, thus, a lower range of possible sales prices for these sellers. Use of a type-approved scale by appellants could well result in a substantial financial benefit for prospective sellers."

Next, the General Counsel considered whether the term "commercial purpose" in the statute could apply when the entity providing the scale was a buyer, as opposed to a seller. The General Counsel concluded, "common sense" dictated a buyer is engaged in a commercial purchase when it is involved in a transaction. The CDFA affirmed the

7

Department's decision and granted the Department permission to proceed with collecting the $350 penalties.[5]

### E.    TRIAL COURT

In February 2012, appellants petitioned the trial court for an administrative writ of mandate. In the petition, appellants argued section 12500.5 does not apply to Gold Buyers because Gold Buyers do not sell gold to customers. Addressing the plain language of the statute, Gold Buyers asserted section 12500.5 only applies to sellers, not buyers. Appellants argued the consumer protection policy behind the statute would not be served by having appellants' scales certified because the sale price of the gold is not determined by the gold's weight, thus there is no protection being afforded the consumer by the scales being certified.

In the petition, appellants requested: (1) a writ of administrative mandate directing the Department to dismiss its proceedings against appellants, (2) an injunction restraining the Department from requiring appellants to register their scales, and (3) attorneys' fees.

The Department opposed the writ petition. In regard to plain language, the Department asserted the statute does not limit transactions to selling, rather, the relevant phrase is "'use for commercial purposes,'" which is much broader than simply selling. The Department asserted appellants use the scales for a commercial purpose by weighing the gold to determine a maximum purchase price. In regard to policy, the

---

[5] It is unclear from the record if, after the cases were consolidated, there was a single $350 penalty for both stores, or a $350 penalty for each store.

Department argued inaccurate scales at Gold Buyers' stores could result in maximum prices being too low, therefore, consumers would be protected by having certified scales.

On March 16, 2012, the trial court held a hearing on appellant's writ petition. In giving its tentative ruling, the trial court concluded "the scales are clearly used as part of the transaction." The trial court explained the scales may be used as a "kind of showmanship," but that appellants used the scales prior to offering a price, and therefore the scales were used in the transaction.

The trial court then addressed the issue of whether appellants needed to be the sellers (as opposed to the buyers) in order for section 12500.5 to apply to them. The trial court concluded the statute does not reflect the business has to be the seller. Therefore, since there is a sale occurring, regardless of whether the business providing the scales is the buyer or seller, the statute applies. The trial court stated its tentative conclusion was that appellants needed to have Department-approved scales.

Appellants argued, "the spirit and intention" of section 12500.5 is to protect consumers, and therefore, logically, since appellants are the consumer/buyer, the people selling the gold should provide the scales. Appellants explained they did not actually want customers to have to provide scales, but were making a point about the logical plain reading of the statute and the consumer protection policy behind the statute.

The court explained appellants were incorrectly focusing on the "sold" aspect of the statute, when they should be focusing on the "use" portion of the statute. The trial court denied appellants' writ petition. Appellants had previously consolidated their

9

complaint into the writ petition. Therefore, due to the writ petition being denied, the trial court dismissed appellants' entire action with prejudice.

## DISCUSSION

A.     <u>STATUTORY INTERPRETATION</u>

Appellants assert the trial court erred in interpreting the statute because the plain language of section 12500.5 reflects it does not apply to businesses that purchase gold.

"'"As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose." [Citation.]' [Citation.] Statutory interpretation begins with an analysis of the statutory language. [Citation.] 'If the statute's text evinces an unmistakable plain meaning, we need go no further.' [Citation.] If the statute's language is ambiguous, we examine additional sources of information to determine the Legislature's intent in drafting the statute. [Citations.]" (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147.) "Issues of law raised in a petition for a writ of administrative mandate, including the interpretation of applicable statutes or regulations, are for the courts to resolve de novo. [Citation.]" (*Hoitt v. Department of Rehabilitation* (2012) 207 Cal.App.4th 513, 522.)

The relevant portion of section 12500.5 provides: "It shall be unlawful to sell or use for commercial purposes any weight or measure, or any weighing, measuring, or counting instrument or device, of a type or design that has not first been so approved by the department . . . ."

10

The particular question we are addressing is whether the plain language of the statute reflects a gold-buying business, which purchases gold but does not resell it to customers, would need to have its scales approved by the relevant county department. In other words, if the store providing the scales is the buyer (not the seller) does the statute apply?  Thus, the question becomes whether the "use for commercial purposes" portion of the statute includes businesses that purchase gold from consumers.

"'Commercial purposes' include the determination of the weight, measure, or count of any commodity or thing which is *sold on the basis of weight*, measure, or count; or the determination of the weight, measure, or count of any commodity or thing upon which determination a charge for service is based."  (§ 12500, subd. (e), italics added.)

A plain reading of the statute and subdivision reflect scales have to be certified if the scales are used when an item is sold by weight.  The seller could be the business or the seller could be the customer, but if scales are used when an item is sold by weight, then the scales need to be certified by the relevant department.  The subdivision does not appear to create a distinction concerning whether the business providing the scales is a buyer or a seller, the focus is on scales being used during a transaction.

Appellants contend the use of the word "sold" reflects the law is meant to apply to sellers.  "Sold" is the past tense of sell.  (Webster's Third New International Dictionary (1993) p. 2167.)  "Sell" means "to achieve a sale."  (*Id.* at pp. 2061-2062.)  "Sale" means "a present transfer of such ownership of and title to all of or a part interest in personal property."  (*Id.* at p. 2003.)  Sale is not a seller specific word.  "Sold," "sell,"

11

and "sale" all contemplate the involvement of a buyer, i.e. a transfer of goods. Limiting the meaning of "sold" in the subdivision to only sellers would require this court to read words into the subdivision that were omitted by the Legislature, which we cannot do. (Code Civ. Proc., § 1858 [when interpreting a statute judges should not "insert what has been omitted"].)

The Legislature did not limit the application of the law to sellers. A plain reading of the word "sold" refers to a transaction involving a buyer and a seller; it is not a word that is used only in the context of a seller. Thus, a plain reading of the law reflects the law applies regardless of whether the scale is provided by the buyer or the seller. Accordingly, we conclude the statute applies to gold-buying businesses that are the buyers in the transaction.

### B.    APPLYING THE STATUTE

Appellants contend the trial court erred by applying section 12500.5 to Gold Buyers when Gold Buyers do not purchase gold based upon weight.

Since the facts are undisputed, we apply the de novo standard of review. (*Hansen Brothers Enterprises, Inc. v. Board of Supervisors* (1996) 12 Cal.4th 533, 560.) As set forth *ante*, the law applies when scales are "used for commercial purposes." (§12500.5.) "'Commercial purposes' include the determination of the weight, measure, or count of any commodity or thing which *is sold on the basis of weight*, measure, or count . . . ." (§ 12500, subd. (e).) Thus, the issues in applying the statute are: (1) was the scale used by Gold Buyers, and (2) is the gold sold on the basis of weight.

12

We first address the element of "use." Appellants utilize the scales at Gold Buyers' stores to weigh the item. The weight assists appellants in arriving at a maximum offer price, which appellants rely on during the negotiations with the customer. Therefore, the scales are used by appellants as part of the transaction because the weight provides appellants the means of calculating a maximum offer price.

We now turn to the second element—whether the gold is sold by the weight. Appellants weigh the gold to determine a maximum offer price. After negotiations, a final price is settled upon by the customer and Gold Buyers. The issue is, after the negotiations, is whether the final price is based upon weight. We conclude it is. The value of the gold must be tied to something. In this situation, that value is not tied to the number of items, the volume of the items, the cost to produce the items, et cetera. The value of the gold is determined by the weight. Ultimately, the customer might accept $20 per gram of gold, rather than $50 per gram of gold, but it is the weight of the item that forms the value of the gold.

In other words, the gold is not sold in a vacuum. Rather, the pricing process begins with weighing the gold. The item will never be sold for more than Gold Buyers' maximum purchase price, which is tied to the item's weight. The price may change during negotiations, but it does not change based upon count, sentiment, volume, or other pricing factors—the key pricing factor remains weight. The only thing that fluctuates during negotiations is how much money the customer will accept for the item, e.g. $20 per gram or $50 per gram. Accordingly, we conclude the gold, even after

13

negotiating for a final price, is sold by the weight. Therefore, the statute was properly applied to Gold Buyers because they use the scales for a commercial purpose.

C. POLICY

Appellants present a policy argument. Appellants assert the scale certification law was intended to protect consumers who purchase items sold by volume or weight. For example, if a person purchases one pound of apples for two dollars, then the scale should accurately reflect the weight of the apples so the consumer is charged the proper price. Appellants contend that the consumer protection policy will not be served in this case because the gold is not sold by the weight.

Contrary to appellants' position, the policy of consumer protection will be served by applying section 12500.5 to Gold Buyers. As set forth *ante*, the gold is sold by the weight. In particular, if Gold Buyers' scales are under-reporting the weight of an item, then the business will set the maximum price for the item lower than it should. If the scales are properly calibrated, then the transaction will involve a fairer maximum price, thus protecting consumers. Accordingly, we find appellants' policy argument to be unpersuasive.

D. ATTORNEYS' FEES

Appellants assert they should be awarded their attorneys' fees and costs on appeal because appellants are enforcing "an important right affecting the public interest." (Code Civ. Proc., § 1021.5.)

Code of Civil Procedure section 1021.5 authorizes a court to "award attorneys' fees to a *successful* party against one or more opposing parties in any action which has

14

resulted in the enforcement of an important right affecting the public interest." (Italics added.) "Successful party" means "'the party that """succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" [Citation.]"' [Citation.]" (*McGuigan v. City of San Diego* (2010) 183 Cal.App.4th 610, 625.)

Appellants did not succeed on any of the issues they raised, and therefore are not successful parties. Since appellants are not successful parties, they cannot be awarded attorneys' fees under Code of Civil Procedure section 1021.5. Accordingly, we do not award appellants their attorneys' fees.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P.J.

McKINSTER
J.